83 Cal.App.3d 492 (1978)
147 Cal. Rptr. 898
ROSEMARY RUTH BARTELL et al., Plaintiffs and Appellants,
v.
PALOS VERDES PENINSULA SCHOOL DISTRICT, Defendant and Respondent.
Docket No. 52157.
Court of Appeals of California, Second District, Division Two.
August 2, 1978.
*495 COUNSEL
Morgan, Wenzel & McNicholas and Darryl L. Dmytriw for Plaintiffs and Appellants.
McKay, Byrne & Udkovich and Michael A. Byrne for Defendant and Respondent.
OPINION
FLEMING, Acting P.J.
Plaintiffs sued for damages for wrongful death of their son. The general demurrer of defendant Palos Verdes Unified School District (school district) to the fourth amended complaint was *496 sustained without leave to amend, and plaintiffs appeal the judgment of dismissal.
We review the trial court decision under the general rule that accepts all factual allegations as true in determining whether a complaint states a cause of action. (Marvin v. Marvin (1976) 18 Cal.3d 660, 666 [134 Cal. Rptr. 815, 557 P.2d 106].) According to the complaint, about 5:25 p.m. on 5 February 1975 plaintiffs' 12-year-old son and a companion gained access to the playground at Lunada Bay Elementary School, either through an unlocked gate or a hole in the fence. Plaintiffs' son suffered fatal injuries when he fell playing a game "... slung from the end of a rope while riding a skateboard." In 12 causes of action[1] plaintiffs allege defendant knew the game was dangerous and could be played locally only on the unobstructed surface of the school grounds. Plaintiffs predicate recovery against the school district on theories of (1) maintenance of a dangerous condition (Gov. Code, § 835), and (2) negligent failure to supervise and maintain the school grounds or notify parents the gates were not locked or the fence not repaired (Gov. Code, § 815.2, subd. (a)). The trial court dismissed the complaint against the school district for failure to state a cause of action. We affirm.
(1a) 1. No Dangerous Condition. Plaintiffs claim the alleged defective condition of the fence or the unlocked gate, viewed in conjunction with allegations of the known use of the schoolyard for the dangerous skateboard game, constituted the dangerous condition necessary for recovery under Government Code section 835.[2] Plaintiffs bottom this assertion on cases which hold a dangerous condition may exist when the *497 physical condition of the premises is viewed in conjunction with its actual, intended, or reasonably anticipated use.[3]
(2) To constitute a dangerous condition under Government Code section 835, public property must possess a physical defect which creates a substantial, as distinguished from a minor, trivial or insignificant, risk of injury. (Gov. Code, § 830, subd. (a).) Harmful conduct in and of itself cannot form a basis for recovery without a direct causal connection with the physical defect. As stated by the Supreme Court in Hayes v. State of California (1974) 11 Cal.3d 469, 472 [113 Cal. Rptr. 599, 521 P.2d 855]: "Liability for injury caused by a dangerous condition of property has been imposed when an unreasonable risk of harm is created by a combination of defect in the property and acts of third parties.... However, courts have consistently refused to characterize harmful third party conduct as a dangerous condition  absent some concurrent contributing defect in the property itself."
(3) The existence of a dangerous condition, while normally a question of fact, must be resolved as a question of law when reasonable minds can reach but one result. (Gov. Code, § 830.2; Harland v. State of California (1977) 75 Cal. App.3d 475, 484 [142 Cal. Rptr. 201].) (1b) Regardless of whether the fence was in disrepair or the gate unlocked, we do not have a situation where the defect, in and of itself, was inherently dangerous. (Hayes v. State of California, supra, 11 Cal.3d 469; Farrell v. City of Long Beach (1955) 132 Cal. App.2d 818 [283 P.2d 296]; Campbell v. City of Santa Monica (1942) 51 Cal. App.2d 626 [125 P.2d 561].) Even though we assume the school district knew of the dangerous activity (a skateboard version of crack-the-whip), knew the playground was the only unobstructed area where the game could be played locally, and knew the playground was customarily used for such games, the alleged defects merely allowed access to the area, and as such they go to the question of the school district's duty of supervision and control, if any, over its property, and not to the existence of a dangerous condition. The injuries were the direct result of the dangerous conduct of plaintiffs' son and his companion and not of any defective or dangerous condition of the property. We therefore conclude that plaintiffs have not pleaded a *498 dangerous condition of public property within the meaning of Government Code sections 830, 835.[4]
2. No Duty of Care. Plaintiffs have postulated a general duty by defendant to supervise and control activities on the school grounds at all times, and they base various causes of action on the asserted negligent failure of the school district and its employees to supervise the playground, to repair the fence in order to deny children access to the playground during the absence of supervisory personnel, to remove children from the playground when unsupervised, and to warn parents the school grounds were not secured.
(4) Whether a defendant owes a duty of care to a plaintiff is primarily a question of law to be decided on a case-by-case basis. (Weirum v. RKO General, Inc. (1975) 15 Cal.3d 40, 46 [123 Cal. Rptr. 468, 539 P.2d 36].) (5) "As a general principle, a `defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.'" (Tarasoff v. Regents of University of California (1976) 17 Cal.3d 425, 434-435 [131 Cal. Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) However, absent some special relationship a defendant falls under no duty to control the conduct of another, and incurs no liability to those endangered by such conduct. (Larasoff v. Regents of University of California, supra; DeSuza v. Andersack (1976) 63 Cal. App.3d 694, 702-703 [133 Cal. Rptr. 920].)
(6) School districts and their employees have never been considered insurers of the physical safety of their students, but rather are placed under a general duty to supervise the conduct of children on school grounds during school sessions, school activities, recesses, and lunch periods. (Dailey v. Los Angeles Unified School District (1970) 2 Cal.3d 741, 747, 748 [87 Cal. Rptr. 376, 470 P.2d 360].) Despite the broad *499 language in Dailey, which conceivably could require school supervision of all children at all times, a review of the factual situations in Dailey, its predecessor cases, and its progeny,[5] leads to the conclusion that the duty of supervision is limited to school-related or encouraged functions and to activities taking place during school hours. This conclusion is further buttressed by Education Code section 13557,[6] relied upon by the court in Dailey, which specifically requires teachers to supervise student conduct during school sessions and school recesses.
The established duty of a school district to supervise its playgrounds is therefore grounded upon the special relationship between the school and its attending students. (7a) The instant complaint contains no allegation that plaintiffs' deceased son was a student at the school, or was on school grounds in connection with normal school attendance or in connection with a school function. Rather, he was apparently there after school hours on his own volition and for his own amusement; consequently, whether or not he was a student at the school became immaterial. Our question, therefore, is whether a school district owes a general duty of supervision to all who frequent its premises for their own purposes, or, in the alternative, whether, during periods when supervision is lacking a school district is under a duty to secure its playground against those who might intrude upon its premises and injure themselves.
(8) The term "duty" is a conclusory statement which reflects the sum total of policy considerations which leads the law to say a particular plaintiff is entitled to protection against a specific harm. (Dillon v. Legg (1968) 68 Cal.2d 728, 734 [69 Cal. Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; Harris v. De La Chapelle (1976) 55 Cal. App.3d 644, 647 [127 Cal. Rptr. 695].) Even though a harm may be foreseeable, as under plaintiffs' pleadings it was here, a concomitant duty to forestall and prevent the harm does not automatically follow. (Richards v. Stanley (1954) 43 Cal.2d 60, 65 [271 P.2d 23]; Wright v. Arcade School District (1964) 230 Cal. App.2d 272, 279 [40 Cal. Rptr. 812].) Rather, the question is whether the risk of harm is sufficiently high and the amount of activity needed to protect against harm sufficiently low to bring the duty into existence, a threshold issue of law which requires the court to consider *500 such additional factors as the burdensomeness of the duty on defendant, the closeness of the relationship between defendant's conduct and plaintiff's injury, the moral blame attached to defendant's conduct and plaintiff's injury, and the prevention of future harm. (Rowland v. Christian (1968) 69 Cal.2d 108, 112-113 [70 Cal. Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; Harris v. De La Chapelle, supra, 55 Cal. App.3d 644.)
(7b) To require virtual round-the-clock supervision or prison-tight security for school premises, as plaintiffs suggest, would impose a financial burden which manifestly would impinge on the very educational purpose for which the school exists. While it is common knowledge that children often heedlessly engage in games or activities which are dangerous or harmful to their health, at some point the obligation of the public entity to answer for the malfeasance or misfeasance of others, whether children or parents, reaches its outer limits. Public entities labor under budgetary constraints which peculiarly affect their obligation of care. (Wright v. Arcade School District (1964) 230 Cal. App.2d 272, 278-280 [40 Cal. Rptr. 812].) We find no special circumstances here which would impose a general duty on the school district to supervise and control the conduct of persons on its premises apart from school-related activities and functions which require persons to be on school grounds.
There being neither a dangerous condition of school premises nor a general duty on the school district to supervise and control at all times activities on its playgrounds, the complaint failed to state a cause of action.
The judgment is affirmed.
Compton, J., and Beach, J., concurred.
Appellants' petition for a hearing by the Supreme Court was denied September 27, 1978.
NOTES
[1] An additional cause of action against two defendant hospitals is still pending, unaffected by the trial court ruling at issue here.
[2] Government Code section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."
[3] Quelvog v. City of Long Beach (1970) 6 Cal. App.3d 584, 588-591 [86 Cal. Rptr. 127] (illegal vehicular use of sidewalks designed for easy access encouraged by city); Hibbs v. Los Angeles County Flood Control District (1967) 252 Cal. App.2d 166, 171-172 [60 Cal. Rptr. 364] (unfenced drainage canal played in by children); Torkelson v. City of Redlands (1961) 198 Cal. App.2d 354, 361 [17 Cal. Rptr. 899] (unfenced storm drain played in by children); Holder v. City of Santa Ana (1962) 205 Cal. App.2d 194, 198 [22 Cal. Rptr. 707] (unfilled sandbox under a tree used for climbing); Gallipo v. City of Long Beach (1956) 146 Cal. App.2d 520, 528 [304 P.2d 106] (pipes used as walkway over railroad tracks).
[4] With the exception of Quelvog v. City of Long Beach (1970) 6 Cal. App.3d 584 [86 Cal. Rptr. 127], the cases relied upon by plaintiffs set out in footnote 3 are distinguishable from that at bench, in that they involve a known or foreseeable use of public property which becomes hazardous because of the inherent danger or dangerous design of the property itself on which the injury occurred. In Quelvog liability for a dangerous condition existed by virtue of (a) sidewalk design which allowed vehicular access and (b) illegal vehicular use of sidewalks which was encouraged by the city. In adjudicating liability the court focused on defendant's encouragement of the use of public property in a manner which imperilled the safety of others.
[5] Taylor v. Oakland Scavenger Company (1941) 17 Cal.2d 594, 600 [110 P.2d 1044]; Bellman v. San Francisco High School District (1938) 11 Cal.2d 576, 580-581 [81 P.2d 894]; cf. Niles v. City of San Rafael (1974) 42 Cal. App.3d 230 [116 Cal. Rptr. 733]; Ross v. Campbell Union School District (1977) 70 Cal. App.3d 113, 119 [138 Cal. Rptr. 557].
[6] Repealed and reenacted as Education Code section 44807, effective 30 April 1977.