[No. S050162. Dec. 31, 1998.]

FREDERICK HOFF et al., Plaintiffs and Appellants, v.
VACAVILLE UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

928

**COUNSEL**

Michael W. Milward and Bryan M. Hansen for Plaintiffs and Appellants.

Bolling, Walter & Gawthrop, Marjorie E. Manning; Angelo, Kilday & Kilduff and Laurence L. Angelo for Defendant and Respondent.

Farmer & Murphy, Craig E. Farmer and Frank J. Torrano for Northern California Regional Liability Excess Fund Joint Powers Authority, Southern California Regional Liability Excess Fund Joint Powers Authority and Schools Excess Liability Fund as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**CHIN, J.**—Plaintiff Frederick Hoff (Hoff) suffered serious injuries when a student exiting a high school parking lot jumped the curb with his car and struck Hoff, who was on the sidewalk across the street. We granted review to consider whether Hoff can pursue a negligence claim against the school district based on the breach of a duty to supervise the student. On the facts of this case, we conclude that neither the school district nor any of its employees owed a duty to Hoff, a nonstudent who was not on school property at the time of the accident. Accordingly, we reverse the judgment of the Court of Appeal, which held to the contrary.

### FACTUAL AND PROCEDURAL BACKGROUND

The trial court entered judgment for the Vacaville Unified School District (District) upon granting a motion for nonsuit after opening statement. Accordingly, on review, we accept as true all facts Hoff asserted in his opening statement and indulge every legitimate inference those facts support. (*Willis* v. *Gordon* (1978) 20 Cal.3d 629, 633 [143 Cal.Rptr. 723, 574 P.2d 794]; *Abeyta* v. *Superior Court* (1993) 17 Cal.App.4th 1037, 1041 [21 Cal.Rptr.2d 680].)

At the end of the last day of the 1991-1992 school year, Jason Lozano, a 16-year-old student at Vacaville High School, lost control of his car as he exited the school's overflow parking lot and struck Hoff. In exiting the lot, Lozano had "floor[ed]" the accelerator, "peeled out" with the wheels "screeching," "fishtailed," and jumped the curb and hit Hoff, who was walking on the sidewalk across the street. Lozano had been driving for six months, had no history of misbehavior, and obeyed his school supervisors. Hoff sustained severe injuries in the accident.

Both the overflow parking lot and the school's main parking lot exited onto West Monte Vista Avenue, a "very busy street." Since the 1980's, school authorities, who knew that young drivers "would burn rubber," "hang out of windows," and "ride on top of cars," had assigned trained employees to direct traffic exiting the main parking lot at the end of the school day. These traffic supervisors could stop traffic on the street to allow students to exit the lot and could suspend students who drove recklessly or revoke their campus parking permits. However, the overflow lot "was never supervised," even though the school had the money and personnel to do so.

Hoff filed suit seeking recovery for his injuries, naming the District as one of the defendants.[1] In a negligence claim against the District, Hoff alleged that the District: (1) "had statutory duties, pursuant to California Education[] Code section 44807, to supervise [its] students on the premises of the Vacaville High School, including in the overflow lot and at the exit of the overflow parking lot at the end of the school day"; (2) "had undertaken the duty and responsibility to supervise [its] student drivers on the public street, and had assumed joint control of the public street for that purpose, as they exited the main parking lot at Vacaville High School onto said public street"; (3) "owed a duty of due care to [Hoff] to fulfill [its] statutory duty to supervise [its] students on the campus and [its] assumed duty to supervise students with reasonable care on the public street as they leave the high school premises"; and (4) was "negligent in the performance of [its] statutory duties and in the duties [it] assumed by [its] conduct, pursuant to California Education Code section 44807 and 44808 so as to cause the injuries to" Hoff.

Trial against the District began in September 1996. After Hoff's opening statement, the District moved for nonsuit, arguing that it owed Hoff no duty of care. Although the trial court had previously rejected the same argument in denying a summary judgment motion, it granted the motion for nonsuit, finding that the District owed Hoff no duty of care. The trial court later entered judgment for the District.

The Court of Appeal reversed the judgment, finding that the District owed a duty to exercise reasonable care in supervising its students for the protection of both students and nonstudents. We then granted the District's petition for review.

---

[1]Eleanor Hoff, Frederick's wife, also sued for loss of consortium. Because her claim depends on Frederick's right to sue the District, we do not discuss it separately. (See *Hendy v. Losse* (1991) 54 Cal.3d 723, 728, fn. 3 [1 Cal.Rptr.2d 543, 819 P.2d 1].)

## DISCUSSION

■ Under the California Tort Claims Act (Gov. Code, § 810 et seq.),[2] "a public entity is not liable for injury arising from an act or omission except as provided by statute. (Gov. Code, § 815, subd. (a); [citation].)" *(Creason* v. *Department of Health Services* (1998) 18 Cal.4th 623, 630-631 [76 Cal.Rptr.2d 489, 957 P.2d 1323].) Thus, in California, "all government tort liability must be based on statute [citation]." *(Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 785, fn. 2 [221 Cal.Rptr. 840, 710 P.2d 907].) " 'In the absence of a constitutional requirement, public entities may be held liable only if a statute . . . is found declaring them to be liable.' " *(County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479, 481 [105 Cal.Rptr. 374, 503 P.2d 1382].)

■ Section 815.2, subdivision (a), is one such statute. It provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee . . . ." Through this section, the California Tort Claims Act expressly makes the doctrine of respondeat superior applicable to public employers. *(Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 209 [285 Cal.Rptr. 99, 814 P.2d 1341].) "A public entity, as the employer, is generally liable for the torts of an employee committed within the scope of employment if the employee is liable. [Citations.]" *(Thomas* v. *City of Richmond* (1995) 9 Cal.4th 1154, 1157 [40 Cal.Rptr.2d 442, 892 P.2d 1185].) Under section 820, subdivision (a), "[e]xcept as otherwise provided by statute . . . , a public employee is liable for injury caused by his act or omission to the same extent as a private person." Thus, "the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person (§ 820, subd. (a)) and the public entity is vicariously liable for any injury which its employee causes (§ 815.2, subd. (a)) to the same extent as a private employer (§ 815, subd. (b))." *(Societa per Azioni de Navigazione Italia* v. *City of Los Angeles* (1982) 31 Cal.3d 446, 463 [183 Cal.Rptr. 51, 645 P.2d 102], fn. omitted.)

■ Through these statutes, "the Legislature incorporated 'general standards of tort liability as the primary basis for respondeat superior liability of public entities. . . .' [Citation.]" *(Mary M.* v. *City of Los Angeles, supra,* 54 Cal.3d at pp. 209-210.) Under them, "a school district is vicariously liable for injuries proximately caused by [the] negligence" of school personnel "responsible for student supervision." *(Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 [87 Cal.Rptr. 376, 470 P.2d 360] *(Dailey)*; see

---

[2]Unless otherwise indicated, all further statutory references are to the Government Code.

also *Castro* v. *Los Angeles Bd. of Education* (1976) 54 Cal.App.3d 232, 235 [126 Cal.Rptr. 537] [under § 815.2, "school districts are liable for the negligence of their employees"].) ■ Thus, the District's liability under section 815.2 depends on whether school personnel, by failing to supervise Lozano as he exited the overflow parking lot, breached a duty owed Hoff.

## I. *No Common Law Duty Runs to Hoff*

■ To say that someone owes another a duty of care " 'is a shorthand statement of a conclusion, rather than an aid to analysis in itself. . . . "[D]uty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' [Citation.]" (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) "[L]egal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] (*Tarasoff*).)

■ "As a general rule one has no duty to control the conduct of another, and no duty to warn those who may be endangered by such conduct. [Citations.] A duty may arise, however, where '(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection.' (Rest.2d Torts, § 315; [citations].)" (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 806 [205 Cal.Rptr. 842, 685 P.2d 1193] (*Peterson*).) "This rule derives from the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter. [Citation.]" (*Tarasoff, supra*, 17 Cal.3d at p. 435, fn. 5.)

In this case, Hoff does not argue that a special relationship exists between himself and school personnel. Rather, emphasizing that "a 'special relationship' *need not exist* between the defendant (here District) and victim (Mr. Hoff)," and quoting *Tarasoff, supra*, 17 Cal.3d at page 435, Hoff argues that "the special relationship between the School District and its student Jason [Lozano] imposes upon the School District a duty to exercise reasonable care to control the student to '. . . protect all persons who are foreseeably endangered by his (Jason's) conduct.' "

■ As we have explained, "in some instances the relationship of [school personnel] to . . . students gives rise to a duty of care. . . . 'While

school districts and their employees have never been considered insurers of the physical safety of students, California law has long imposed on school authorities a duty to "supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.]" [Citations.] [Citations.] The standard of care imposed upon school personnel in carrying out this duty to supervise is identical to that required in the performance of their other duties. This uniform standard to which they are held is that degree of care "which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances." [Citations.] Either a total lack of supervision [citation] or ineffective supervision [citation] may constitute a lack of ordinary care on the part of those responsible for student supervision. . . .' [Citation.]" (*Peterson, supra*, 36 Cal.3d at pp. 806-807, fn. 3.)

In a number of cases, California courts have recognized that a *student* may recover for injuries proximately caused by a breach of this duty of supervision. (E.g., *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 523 [150 Cal.Rptr. 1, 585 P.2d 851]; *Dailey, supra*, 2 Cal.3d at pp. 747-751.) ■ However, before the Court of Appeal issued its opinion in this case, no reported California decision had considered whether the duty of student supervision that arises out of the relationship between school personnel and students may support recovery by nonstudents, like Hoff, who are injured off campus.[3]

In considering this novel question, it is instructive to consider the limits of the common law duty that parents owe third parties to supervise and control the conduct of their children. ■ "[A] parent may become liable for an injury caused by the child where the parent's negligence made it possible for the child to cause the injury complained of, and probable that [the child] would do so. [Citations.]" (*Buelke* v. *Levenstadt* (1923) 190 Cal. 684, 689 [214 P. 42].) "California follows the Restatement rule (Rest.2d Torts, § 316), which finds a 'special relationship' between parent and child, and accordingly places upon the parent 'a duty to exercise reasonable care so to control his minor child as to prevent [the child] from intentionally harming others or

---

[3]*Lehmuth* v. *Long Beach Unified Sch. Dist.* (1960) 53 Cal.2d 544 [2 Cal.Rptr. 279, 348 P.2d 887] is not to the contrary. Although *Lehmuth* referred to the school district's "duty to properly supervise the members of the student body, in order to guard the members of the public" (*id.* at p. 552), the injured parties in *Lehmuth* "were students of the college." (*Id.* at p. 550.) Moreover, the school district's liability was "a primary one created by statute." (*Ibid.*) The relevant statutes were Education Code former section 16142, which provided for organization of student body associations " 'subject to the control and regulation of the governing board of the school district,' " and Vehicle Code former section 400, which expressly imposed on the school district "liability for . . . the negligent operation of [a] motor vehicle by an officer, agent or employee." (*Lehmuth, supra*, 53 Cal.2d at p. 551, italics omitted.) Neither of these statutes is relevant in this case.

from so [behaving] . . . as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control.' [Citations.]" (*Robertson* v. *Wentz* (1986) 187 Cal.App.3d 1281, 1288-1289 [232 Cal.Rptr. 634].) Thus, "[k]nowledge of dangerous habits and ability to control the child are prerequisites to imposition of liability. [Citations.]" (*Id.* at p. 1290.) "[O]nly the manifestation of specific dangerous tendencies . . . triggers a parental duty to exercise reasonable care to control the minor child in order to prevent . . . harm to third persons. [Citation.]"[4] (*Robertson* v. *Wentz, supra,* 187 Cal.App.3d at p. 1290; see also *Weisbart* v. *Flohr* (1968) 260 Cal.App.2d 281, 291 [67 Cal.Rptr. 114] [parents liable only if they "became aware of habits or tendencies of the infant which made it likely that the child would misbehave so that they should have restrained him"].)

In *Perry* v. *Simeone* (1925) 197 Cal. 132 [239 P. 1056], we applied these principles to facts analogous to those now before us. There, defendants' 15-year-old daughter negligently operated an automobile, causing a fatal collision. On appeal, we reversed a judgment against defendants because the evidence showed they "had no knowledge of the fact . . . that the[ir] daughter was or ever had been careless in the operation of the automobile," and that "their only knowledge and observation of the daughter's habits in that regard were that [she] drove the car in a prudent and careful manner." (*Id.* at p. 137.) In reaching this conclusion, we refused to "take judicial notice of the fact that a girl of fifteen years of age cannot possibly be competent to operate an automobile." (*Id.* at p. 134.) Instead, we reasoned in part that the Vehicle Code, which then established 14 as the minimum age limit for obtaining a driver's license, "must be regarded as a declaration that persons of the age of fifteen years may be competent to operate motor vehicles." (*Id.* at p. 135.)

■ We find it appropriate to look to these limits on the common law parental duty of supervision in determining whether, on the facts of this case, any duty of District employees to supervise students ran to Hoff. The relationship between school personnel and students is analogous in many ways to the relationship between parents and their children. At common law, "[s]chool officials are said to stand *in loco parentis*, in the place of parents, to their students, with similar powers and responsibilities. [Citation.]" (*In re Christopher W.* (1973) 29 Cal.App.3d 777, 780-781 [105 Cal.Rptr. 775], disapproved on another ground in *In re William G.* (1985) 40 Cal.3d 550,

---

[4]In addition to negligence liability based on their own breach of duty, parents, by statute, have limited vicarious liability for the acts of their children. (Civ. Code, § 1714.1, subd. (a); Veh. Code, §§ 17708, 17709.)

566 [221 Cal.Rptr. 118, 709 P.2d 1287].) Moreover, by statute, we measure school personnel's criminal liability for exercising physical control over students by the standard applicable to parents. (Ed. Code, § 44807.)[5] Given these similarities, any duty that school employees owe off-campus nonstudents should *at least* be no greater in scope than the duty that parents owe third persons. (Cf. *Costello* v. *Hart* (1972) 23 Cal.App.3d 898, 900-901 [100 Cal.Rptr. 554] [looking to parental duty in considering liability of grandparents for acts of grandchild over whom they exercised control]; *Poncher* v. *Brackett* (1966) 246 Cal.App.2d 769, 773 [55 Cal.Rptr. 59] [same].) Accordingly, school personnel who neither know nor reasonably should know that a particular student has a tendency to drive recklessly owe no duty to off-campus nonstudents.

This conclusion is consistent with that which courts from other jurisdictions have reached in considering claims like Hoff's. In *Thompson* v. *Ange* (1981) 83 A.D.2d 193 [443 N.Y.S.2d 918, 919-920] (*Ange*), plaintiffs sustained injury when a student driving from a high school to a vocational school caused an accident on a public highway. Plaintiffs sued school authorities in negligence, alleging they had negligently supervised the student and failed to enforce a school rule requiring students to ride a bus to the vocational school. (*Ibid.*) Looking to the limits of a parent's common law duty to supervise children, the court affirmed summary judgment for the school authorities. (*Id.* at p. 921.) It explained: "The uncontroverted proof was that [the student] was a licensed driver. The schools' awareness of reckless driving by some students and their concern for student safety is not sufficient to show that [the student] was anything but the average 17-year old whom the Legislature has determined may be licensed to drive[]. There is no claim that the schools had notice that [the student] was an incompetent driver. The risk that [the student] would be involved in an automobile accident was no greater than the risk incurred by the operation of an automobile by any average 17-year old driver." (*Ibid.*; see also *Wickey* v. *Sparks* (Ind.Ct.App. 1994) 642 N.E.2d 262, 267 [premising lack of duty in part on lack of evidence student participated in horseplay or was otherwise an unsafe driver, despite school's knowledge that some students engaged in horseplay].)

Our conclusion is also consistent with *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].

---

[5]Education Code section 44807 provides in relevant part: "A teacher, vice principal, principal, or any other certificated employee of a school district, shall not be subject to criminal prosecution or criminal penalties for the exercise, during the performance of his duties, of the same degree of physical control over a pupil that a parent would be legally privileged to exercise but which in no event shall exceed the amount of physical control reasonably necessary to maintain order, protect property, or protect the health and safety of pupils, or to maintain proper and appropriate conditions conducive to learning."

There, we held that public entities have no affirmative duty to warn of the release of an inmate with a violent history unless the inmate makes a specific threat against a specific, identifiable victim or group of victims. (*Id.* at p. 758.) In reaching this conclusion, we noted that "whenever a potentially dangerous offender is released and thereafter commits a crime, the possibility of the commission of that crime is statistically foreseeable. Yet the Legislature has concluded that the benefits to society from rehabilitative release programs mandate their continuance." (*Ibid.*) Similarly, given the immaturity of teenage drivers, accidents caused by their reckless driving are statistically foreseeable. Yet the Legislature has concluded that the benefits to society from issuing them licenses outweigh the risks. Therefore, school personnel who lack specific knowledge about the dangerous propensities of a particular student driver have no duty to off-campus nonstudents. As the New York court explained in *Ange*, "[i]t would be extending the legal consequences of wrongs beyond a controllable degree to hold that the use of an automobile by a licensed operator under these circumstances constitutes an unreasonable risk to others for which . . . schools may be liable." (*Ange, supra*, 443 N.Y.S.2d at p. 921.)

Under this rule, any common law duty of District employees to supervise students did not run to Hoff. According to Hoff's opening statement, the accident occurred "off-campus," on the sidewalk across the street from the school's overflow parking lot. School personnel considered Lozano a "[g]ood kid" who was "[r]esponsible" and "never disobeyed them." Thus, they neither knew nor had reason to know that Lozano had a propensity to operate his car recklessly (if, in fact, he did). Accordingly, they owed Hoff no duty, and the District may not be held liable for any breach of duty by its employees.[6]

## II. *No Statutory Duty Runs to Hoff*

Hoff contends his negligence claim may proceed under Education Code section 44807, which provides in relevant part: "Every teacher in the public schools shall hold pupils to a strict account for their conduct on the way to and from school, on the playgrounds, or during recess." According to Hoff, this statute establishes a duty of student supervision that extends to him because "[v]irtually all high school teachers and all parents of teenage drivers know that automobile driving is, by far, the most dangerous daily activity which teenage students are routinely permitted to do on school

---

[6]Given the facts of this case, and contrary to the assertion of the concurring opinion (conc. opn. of Mosk, J., *post*, at p. 951), we proffer no opinion (either express or implied) as to the existence or scope of a duty where school personnel have knowledge of a particular student's dangerous propensity.

grounds." "Therefore," Hoff asks rhetorically, "if student driving on school grounds does not fall with in [*sic*] the ambit of activities to be supervised under Education Code section 44807, then what activity does?"

 "A duty of care, and the attendant standard of conduct required of a reasonable [person], may of course be found in a legislative enactment which does not provide for civil liability. [Citations.] In this state a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute. [Citations.] The Legislature has . . . codified this presumption with the adoption of Evidence Code section 669: 'The failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately caused death or injury to person or property; (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.' (Subd. (a).)" (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164-165 [95 Cal.Rptr. 623, 486 P.2d 151].) "Whether the injury involved resulted from an occurrence of the nature which the statute was designed to prevent and whether the plaintiff was one of the persons for whose protection the statute was enacted are questions of law. [Citations.]" (*Fredette* v. *City of Long Beach* (1986) 187 Cal.App.3d 122, 135 [231 Cal.Rptr. 598].)

 In this case, Hoff cannot invoke Education Code section 44807 to support a negligence claim against District teachers—or, therefore, vicariously against the District under Government Code section 815.2—because his injury did not "result[] from an occurrence of the nature which the statute . . . was designed to prevent" (Evid. Code, § 669, subd. (a)(3)) and he is not "one of the class of persons for whose protection the statute . . . was adopted." (Evid. Code, § 669, subd. (a)(4).) As we observed in *Dailey* regarding the predecessor sections of Education Code section 44807, " 'the purpose of the law . . . requiring supervision of pupils . . . is to regulate their conduct so as to prevent *disorderly and dangerous practices* which are likely to result in physical injury *to immature scholars under their custody*.' [Citation.]" (*Dailey, supra,* 2 Cal.3d at p. 748, fn. 4, second italics added.) In *Dailey,* we also cited Education Code section 44807's predecessor in stating that "California law has long imposed on school authorities a duty to 'supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations *necessary to their protection.* [Citations.]' [Citations.]" (*Dailey, supra,* 2 Cal.3d at p. 747, italics added.)

Consistent with these pronouncements, Hoff concedes in his brief that, "[a]lmost unquestionably, Education Code section 44807 and its forerunners were designed primarily to safeguard students . . . ." Because the Legislature most certainly did not design Education Code section 44807 to protect against the risk of injury to members of the general public who, like Hoff, are not on school property, Hoff may not state a negligence claim based on the duty of teachers under Education Code section 44807 to "hold pupils to a strict account of their conduct . . . ." (See *Figone* v. *Guisti* (1919) 43 Cal.App. 606, 608-610 [185 P. 694] [plaintiffs may not base negligence claim on violation of employment statute enacted for protection and well-being of minor who killed plaintiffs' son].)

Nor can Hoff rely on Education Code section 44807 to state a claim directly against the District under Government Code section 815.6, which provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." By its terms, Education Code section 44807 requires only "teacher[s]" to hold pupils to a strict account for their conduct; it does not purport to impose a mandatory duty more broadly on any public entity. Moreover, like Evidence Code section 669, Government Code section 815.6 applies only if the plaintiff's injury is "one of the consequences which the Legislature sought to prevent through imposing the alleged mandatory duty."[7] (*Zolin* v. *Superior Court* (1993) 19 Cal.App.4th 1157, 1161 [23 Cal.Rptr.2d 871].) As we have already explained, Hoff's injury does not fall within "the risk of a particular kind of injury" against which the Legislature "designed" Education Code section 44807 to protect. (§ 815.6.) Therefore, Hoff cannot base a direct claim against the District under section 815.6 on any duty that Education Code section 44807 imposes. (See *Nunn* v. *State of California* (1984) 35 Cal.3d 616, 626 [200 Cal.Rptr. 440, 677 P.2d 846] [no claim under section 815.6 where "primary purpose" of statute was not to protect decedent from

---

[7]The similarity between Government Code section 815.6 and Evidence Code section 669 is not accidental. As the Law Revision Commission comment to section 815.6 explains, "[t]his section declares the familiar rule . . . that failure to comply with applicable statutory or regulatory standards is negligence unless reasonable diligence has been exercised . . . to comply with those standards. [Citations.]" (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1995 ed.) § 815.6, p. 210; see also *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 695 [94 Cal.Rptr. 421, 484 P.2d 93].) " 'In its practical application, [the] standard for determining whether a mandatory duty exists is virtually identical to the test for an implied statutory duty of care.' . . . [Although] there is a semantic distinction in the labels attached to each cause of action, there is no legal difference in the analytic process to determine the existence of a duty of care." (*Tirpak* v. *Los Angeles Unified School Dist.* (1986) 187 Cal.App.3d 639, 646 [232 Cal.Rptr. 61].)

type of injury he sustained, and statute conferred only "incidental" benefit on him].)

 Finally, Hoff contends Education Code section 44808 "constitutes a second, statutory basis of school district liability where a school specifically assumes a responsibility and then fails to exercise it reasonably." That section states in relevant part: "Notwithstanding any other provision of this code, no school district . . . or any officer or employee of such district . . . shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district . . . or person has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances." (Ed. Code, § 44808.) According to Hoff, "the District undertook the responsibility of supervising driving in one [parking] lot; thus, it is for the jury to determine whether that undertaking constituted a[n] [Education Code section] 44808 'specific assumption' and, if so, whether the District's subsequent failure to supervise the subject lot was negligent."

Hoff's claim under Education Code section 44808 fails. The part of Education Code section 44808 on which Hoff relies applies only where a school district has "specifically assumed" responsibility or liability "for the conduct or safety of any pupil . . . at any time when such pupil is not on school property . . . ." In this case, the decision to supervise the school's main parking lot does not appear to constitute *specific assumption* of responsibility or liability *for a student's off-campus conduct.* In any event, according to Hoff's opening statement at trial, the evidence would "show that [the overflow] parking lot was never supervised at the end of the school day." Contrary to Hoff's argument, this record unequivocally establishes that the District did *not* specifically assume any responsibility to supervise student driving in the overflow lot. Hoff cannot expand the decision to supervise the main parking lot into assumption of a general duty to supervise all student driving at the school. Thus, he cannot establish a claim under Education Code section 44808.

## DISPOSITION

For the reasons stated above, we find that the trial court properly granted the District's motion for nonsuit and entered judgment for the District. Accordingly, we reverse the judgment of the Court of Appeal.

Kennard, J., Werdegar, J., and Brown, J., concurred.

**MOSK, J.**—I concur in the judgment for the reasons discussed below. I do not concur in the majority's analysis, which implies an inappropriate expansion of the duty of school employees to control the conduct of students with regard to nonstudents, based on an ill-conceived analogy to the broad duty of a parent to control a child.

I

Plaintiff Frederick Hoff, a nonstudent, was injured across the street from a public high school when he was struck by a car driven by Jason Lozano, a student exiting the school parking lot at Vacaville High School. Lozano, a licensed driver, lost control of his car as he drove out of the campus overflow parking lot onto West Monte Vista Avenue and struck Hoff, who was on the sidewalk across the street from the school, causing serious injuries. There was no adult supervisor monitoring the flow of traffic from the lot.

We granted review to address the legal question whether the school district could be held liable for such injury, based on the duty of teachers and other certified employees of a school district to supervise students in their care. I conclude that the answer is no. Although school district employees are obligated to supervise student conduct on school premises during the school day, they do not owe a duty to the general public to monitor student driving to or from school. Accordingly, I would reverse the judgment of the Court of Appeal, which held to the contrary.

II

Whether a duty of care exists in a particular case is a question of law. (*Rodriguez* v. *Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 712 [230 Cal.Rptr. 823].) Accordingly, we review the Court of Appeal's decision on this point under an independent review standard. Because this matter is before us on review of a nonsuit, we must accept as true all facts asserted in Hoff's opening statement and indulge every legitimate inference that may be drawn therefrom. (*Abeyta* v. *Superior Court* (1993) 17 Cal.App.4th 1037, 1041 [21 Cal.Rptr.2d 680].)

Our courts follow a logical sequence of inquiry in determining whether a public entity may be liable for negligence in tort. At the threshold, it must be established that the public entity owed an affirmative duty of care under the circumstances and that there was a statutory basis for liability. " '[I]n California, *all government tort liability must be based on statute.*' " (*Rodriguez* v. *Inglewood Unified School Dist.*, *supra*, 186 Cal.App.3d at p. 716,

italics in *Rodriguez*; Gov. Code, § 815 ["Except as otherwise provided by statute: [¶] [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity . . . ."].)

Only if these points are answered in the affirmative does the question of governmental immunity arise. "Conceptually the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894]; see also *Creason* v. *Department of Health Services* (1998) 18 Cal.4th 623, 630 [76 Cal.Rptr.2d 489, 957 P.2d 1323] ["Analytically, although the issues are somewhat related, the question of possible statutory liability for breach of a mandatory duty ordinarily should precede the question of statutory immunity."]; *Rodriguez* v. *Inglewood Unified School Dist., supra*, 186 Cal.App.3d at p. 723 ["Immunity is the third prong in a governmental tort action analysis, but need not be reached where the cause of action fails for want of statutory liability."].)

Government Code section 815 provides in relevant part: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

Under section 815.2, a school district may be liable for the acts or omissions of school employees within the scope of employment "if the act or omission would, apart from this section, have given rise to a cause of action against that employee. . . ." (*Ibid.*) As explained in *Torsiello* v. *Oakland Unified School Dist.* (1987) 197 Cal.App.3d 41, 44-45 [242 Cal.Rptr. 752]: "The effect of [Government Code section 815.2] is to incorporate 'general standards of tort liability as the primary basis for respondeat superior liability of public entities. . . .' [Citation.] Thus, in a cause of action for negligence, the existence and extent of an entity's vicarious liability under Government Code section 815.2, subdivision (a), will be determined by the scope of the duty legally attributed to its employees." A public employee is liable for negligence "to the same extent as a private person." (Gov. Code, § 820.) Common law principles may be relevant for the purposes of determining whether individual school teachers or administrators have acted negligently. I note, however, that such common law or public policy considerations may not be used to create a nonstatutory basis of liability against a school district in contravention of Government Code section 815.

This case fails at the threshold. Vacaville Unified School District (District) was not liable, either directly or vicariously, to Hoff.

### III

The Court of Appeal concluded that the existing statutory and common law duty of teachers and school employees to supervise their students for their safety also runs to nonstudents such as Hoff. It erred thereby.

#### a

In California, courts have interpreted statutory and constitutional law to impose a duty on the employees of a school district to supervise students for the protection of students.

"While school districts and their employees have never been considered insurers of the physical safety of students, California law has long imposed on school authorities a duty to 'supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.]' [Citations.] The standard of care imposed upon school personnel in carrying out this duty to supervise is identical to that required in the performance of their other duties. This uniform standard to which they are held is that degree of care 'which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances.' [Citations.] Either a total lack of supervision [citation] or ineffective supervision [citation] may constitute a lack of ordinary care on the part of those responsible for student supervision. Under section 815.2, subdivision (a), of the Government Code, a school district is vicariously liable for injuries proximately caused by such negligence." (*Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 [87 Cal.Rptr. 376, 470 P.2d 360].)

Education Code section 44807, in pertinent part, provides: "Every teacher in the public schools shall hold pupils to a strict account for their conduct on the way to and from school, on the playgrounds, or during recess. A teacher, vice principal, principal, or any other certificated employee of a school district, shall not be subject to criminal prosecution or criminal penalties for the exercise, during the performance of his duties, of the same degree of physical control over a pupil that a parent would be legally privileged to exercise but which in no event shall exceed the amount of physical control reasonably necessary to maintain order, protect property, or protect the health and safety of pupils, or to maintain proper and appropriate conditions conducive to learning."

Although Education Code section 44807 refers to "conduct on the way to and from school," the liability of a school district and its employees for

student conduct off campus is expressly qualified. Thus, Education Code section 44808, in pertinent part, provides: "Notwithstanding any other provision of this code, no school district . . . or any officer or employee of such district . . . shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district . . . has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances." Even in such event, however, liability may arise "only while such pupil is or should be under the immediate and direct supervision of an employee of such district . . . ." (*Ibid.*)

A duty to supervise students has also been inferred from article I, section 28, subdivision (c), of the California Constitution, articulating the right of students to school safety: "Right to Safe Schools. All students and staff of public primary, elementary, junior high and senior high schools have the inalienable right to attend campuses which are safe, secure and peaceful."[1]

The foregoing provisions primarily describe a duty to protect *students* entrusted to the care of a school, which may involve controlling the conduct of third persons, presumably including other students, so as to avoid injury to those in their charge. Thus, Education Code section 44807 refers to holding students "to a strict account" for their conduct and immunizes teachers and other certified employees from criminal liability for exercising physical control over students necessary to "maintain order, protect property, or protect the health and safety of pupils, or to maintain proper and appropriate conditions conducive to learning."

Education Code section 44808, which refers to the "conduct or safety of any pupil of the public schools," is intended to *limit* the liability of schools for injury caused to students, or by students, under section 44807 to occurrences on school property, unless the school district specifically has undertaken or assumed responsibility as statutorily described and its employees

---

[1]Some decisions have also cited to Education Code section 48200 et seq., the so-called Compulsory Education Law, which requires, in section 48200, as to "[e]ach person between the ages of 6 and 18 years," "compulsory full-time education . . . for the full time designated as the length of the schoolday . . . ." (See *Rodriguez* v. *Inglewood Unified School Dist.*, *supra*, 186 Cal.App.3d at p. 714 [identifying compulsory education as a factor imposing an affirmative duty to provide protection for students].) See also Penal Code section 627, subdivision (b), restricting access of unauthorized persons to school campuses: "The Legislature declares that the purpose of this chapter is to safeguard the teachers, other employees, students, and property of public schools."

are directly and immediately supervising the students. Like section 44807, it appears to concern, primarily, liability for conduct by students that could cause injury to themselves or other students. Likewise, article I, section 28, subdivision (c), of the California Constitution refers to the right of students and school personnel to secure and safe campuses, but makes no mention of third parties.

The decisions addressing the school district's liability for a breach of the duty to supervise students for their protection rely, for the most part, on Education Code section 44807 or its predecessors. Thus, *Dailey* v. *Los Angeles Unified Sch. Dist., supra,* 2 Cal.3d at page 747, cites former Education Code section 13557, the predecessor to Education Code section 44807. (See also, e.g., *Torsiello* v. *Oakland Unified School Dist., supra,* 197 Cal.App.3d at p. 45 [citing Education Code section 44807]; *Charonnat* v. *S.F. Unified Sch. Dist.* (1943) 56 Cal.App.2d 840, 842 [133 P.2d 643] [citing predecessor of Education Code section 44707]; *Forgnone* v. *Salvadore U. E. School Dist.* (1940) 41 Cal.App.2d 423, 425-426 [106 P.2d 932] [citing predecessor of Education Code section 44707]; *Buzzard* v. *East Lake School Dist.* (1939) 34 Cal.App.2d 316, 320-322 [93 P.2d 233] [citing predecessor of Education Code section 44707 as source of duty to "regulate the conduct of pupils on the playground with respect to known acts or practice of pupils from which, by the exercise of reasonable prudence[,] the school authorities should have anticipated that injuries were likely to follow"].)

The decisions in point have consistently described the statutory duty of school authorities toward their students as, essentially, a duty of supervision for the purpose of protecting them from injury. Thus, in *Dailey* v. *Los Angeles Unified Sch. Dist., supra,* 2 Cal.3d at page 748, we held that a school district was liable for the failure of school authorities to supervise students who were engaged in a "slap fight" during recess. We explained: "Supervision during recess and lunch periods is required, in part, so that discipline may be maintained and student conduct regulated. Such regulation is necessary precisely because of the commonly known tendency of students to engage in aggressive and impulsive behavior which exposes them and their peers to the risk of serious physical harm." (*Ibid.,* fn. omitted.) One of the earliest cases in point explains: "We assume that the purpose of the law requiring supervision of pupils . . . is to regulate their conduct so as to prevent disorderly and dangerous practices which are likely to result in physical injury to immature scholars under their custody." (*Forgnone* v. *Salvadore U. E. School Dist., supra,* 41 Cal.App.2d at p. 426 [school district liable for breach of duty to protect a student injured when her arm was twisted by another student]; accord, *Charonnat* v. *S. F. Unified Sch. Dist., supra,* 56 Cal.App.2d 840, 844; see also, e.g., *Lucas* v. *Fresno Unified School*

*Dist.* (1993) 14 Cal.App.4th 866, 871-872 [18 Cal.Rptr.2d 79] [school district liable for breach of duty to protect a student from injury by a dirt clod thrown by another student]; *Buzzard* v. *East Lake School Dist., supra,* 34 Cal.App.2d at p. 320 [school district liable for breach of duty to protect a student injured when struck by a bicycle ridden by another student on the playground]; *Taylor* v. *Oakland Scavenger Co.* (1941) 17 Cal.2d 594, 600 [110 P.2d 1044] [school district liable for breach of duty to protect a student on the way to the athletic field from injury by a negligently driven garbage truck].)

To be sure, all of the foregoing cases involved injury to a student, and therefore did not require consideration whether the duty to supervise extended to protect nonstudents. Significantly, however, the parties point to no California case that has held that Education Code section 44807 establishes a duty owed by school authorities to nonstudents. Nor, as discussed, does the text of that statute, when read in conjunction with the limitations of Education Code section 44808, support the imposition of such liability under the circumstances here.[2]

Also significantly, although school authorities, in supervising students, act in loco parentis, no statutory provision purports to make them vicariously liable for the misconduct of students. It is, rather, the actual parents who may bear such statutory liability. Thus, Civil Code section 1714.1, subdivision (a), in pertinent part provides: "Any act of willful misconduct of a minor which results in injury or death to another person or in any injury to the property of another shall be imputed to the parent . . . having custody and control of the minor for all purposes of civil damages, and the parent . . . having custody and control shall be jointly and severally liable [up to

[2]In *Lehmuth* v. *Long Beach Unified Sch. Dist.* (1960) 53 Cal.2d 544 [2 Cal.Rptr. 279, 348 P.2d 887], this court held that a school district was liable for injuries to two students caused by the failure of a student employed by the student body association to use a safety chain when he hitched his community college's sound truck to an automobile driven in a homecoming parade. The district's liability was based, inter alia, on former section 903 of the Education Code, which provided that " '[t]he governing board of any school district is liable as such in the name of the district for any judgment against the district on account of injury to person or property arising because of the negligence of the district, or its officers, or employees in any case where a verified claim for damages has been presented.' " (53 Cal.2d at p. 551, fn. omitted.) We noted that the statute had been amended expressly to include liability to nonstudents. (*Id.* at p. 551, fn. 4.) Former Education Code section 903 has since been repealed. (See Gov. Code, §§ 815, 815.2.) *Lehmuth,* unlike the present case, involved the district's "primary duty to reasonably supervise" the members of the college's student body association while they were using school property on the public streets for an activity conducted under faculty supervision. (53 Cal.2d at pp. 551-552; see also former Ed. Code, § 16142 and former Veh. Code, § 400.) It is not analogous; it involved none of the Education Code provisions at issue here. Nor did it purport to address a general common law duty to supervise students.

the amount of $25,000] with the minor for any damages resulting from the willful misconduct." Similarly, Vehicle Code section 17708 provides that "[a]ny civil liability of a minor, whether licensed or not . . . , arising out of his driving a motor vehicle upon a highway with the express or implied permission of the parents . . . is hereby imposed upon the parents . . . [who] shall be jointly and severally liable with the minor for any damages proximately resulting from the negligent or wrongful act or omission of the minor in driving a motor vehicle." (See also *id.*, § 17709 [limiting liability to $15,000 for injury to, or death of, one person].)[3]

In accordance with my understanding of these provisions, I would reject Hoff's claim that the District may be subject to liability based on the duty of its employees under Education Code section 44807. I also conclude that his reliance on Education Code section 44808 is misplaced. Specifically, he contends that because school authorities undertook to direct traffic from the main parking lot, the District therefore owed a duty under Education Code section 44808 to protect him from injury by students leaving the overflow parking lot. Even if that section may be construed to create a duty owed to nonstudents for student conduct off school premises in the limited circumstances described therein, it would be unavailing here. As Hoff concedes, school authorities did *not* undertake to supervise students exiting the overflow lot.

b

Several decisions by our courts refer to a duty to supervise students based on the common law "special relationship" between schools and their students. For instance, *Searcy* v. *Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792, 804 [223 Cal.Rptr. 206] states that "[t]he special relationship doctrine may serve as the basis for . . . the long-established duty of schools to supervise students in their charge and protect them against harm from others on school premises during the school day." (See also *Leger* v. *Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1459 [249 Cal.Rptr. 688] [referring to school district's "special relation[ship] with [student] upon which a duty of care may be founded"]; *Rodriguez* v. *Inglewood Unified School Dist.*, *supra*, 186 Cal.App.3d at p. 715 [concluding that "a special relationship is formed between a school district and its students so as to impose an affirmative duty on the district to take all reasonable steps to protect its students"]; *Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83

---

[3]In the absence of statute, a parent is ordinarily not liable for the torts of his or her minor child. (See *Hagerty* v. *Powers* (1885) 66 Cal. 368, 369 [5 P. 622] ["a father is not liable in damages for the torts of his [minor] child, committed without his knowledge, consent, or sanction"]; 6 Witkin, Summary of Cal. Law (9th ed. 1988), § 1001, p. 391.)

Cal.App.3d 492, 499 [147 Cal.Rptr. 898] [holding that the "established duty of a school district to supervise its playgrounds is therefore grounded upon the special relationship between the school and its attending students"].)

But those decisions suggest that the common law duty to supervise students should be construed, in this context, as no broader than is otherwise provided by the statutes that have codified the obligation of school authorities to students entrusted to their care. Thus, *Bartell* v. *Palos Verdes Peninsula School Dist.*, *supra*, 83 Cal.App.3d at page 499, citing the predecessor to Education Code section 44807, determined that the duty of supervision, arising from the special relationship between school and students, is limited to school-related functions and activities taking place during school hours. Similarly, *Searcy* v. *Hemet Unified School Dist.*, *supra*, 177 Cal.App.3d at page 804, held that the special relationship did not impose on school districts an obligation to supply traffic protection to students en route to and from school beyond that provided under the Education Code: "In light of California's statutory scheme of limited governmental liability, the special relationship doctrine can impose no greater duty of protection on school districts for off-school-grounds hazards than the Legislature has authorized by statute." (See also *Kerwin* v. *County of San Mateo* (1959) 176 Cal.App.2d 304, 307 [1 Cal.Rptr. 437] [the school district-pupil relationship did not impose a duty to supervise students on their way home unless it undertook to provide transportation for them].)

Hoff cites *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508 [150 Cal.Rptr. 1, 585 P.2d 851], as an example of a decision using general tort law principles to expand the statutory duty of a school district to supervise. His point is unavailing. *Hoyem* concluded that a school district owed a duty to supervise a 10-year-old student who, after leaving campus without permission during school hours, was injured several blocks away when he was hit by a motorcycle. The school district's failure to supervise the student on campus was held to be the proximate cause of his injury off campus. *Hoyem* says nothing about a school district's duty to supervise a student to prevent injury to a nonstudent.

IV

The Court of Appeal, relying on our decision in *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] concluded that, apart from existing statutory and common law requirements, policy considerations weigh in favor of judicially recognizing a general duty on the part of school employees to supervise students for the protection of nonstudents under the facts presented. I disagree.

*Tarasoff* involved an action against the Regents of the University of California after psychotherapists employed by the student hospital on the Berkeley campus failed to protect a young woman victim from a violent patient, either by confining the patient or warning of his threat to kill her. *Tarasoff* holds that "once a therapist does in fact determine, or under applicable professional standards reasonably should have determined, that a patient poses a serious danger of violence to others, he bears a duty to exercise reasonable care to protect the foreseeable victim of that danger." (*Tarasoff* v. *Regents of University of California*, *supra*, 17 Cal.3d at p. 439.)

Observing that legal duties are "merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done" (*Tarasoff* v. *Regents of University of California*, *supra*, 17 Cal.3d at p. 434), we analyzed whether the special relationship between a psychotherapist and patient required imposition of a duty of protection to third parties, as an exception to the general principle that a person owes no duty to control the conduct of another or to warn those endangered thereby. (*Id.* at p. 435.) In doing so, we noted as well the factors considered in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]: " 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.' " (*Tarasoff* v. *Regents of University of California*, *supra*, 17 Cal.3d at p. 434.)

In *Rowland*, the court considered these factors in determining whether to formulate an exception to an existing duty. (*Rowland* v. *Christian*, *supra*, 69 Cal.2d at p. 113.) As in *Tarasoff*, however, they are now commonly identified as the balance of considerations for creating a new basis of liability in particular circumstances. Here the Court of Appeal imposed a duty on school employees based on its finding of a special relationship and a determination that the *Rowland* factors justified the result.

I find no such duty under the facts of this case. The critical consideration in finding a special relationship in *Tarasoff* was the fact that the defendant psychotherapists had actual knowledge of "dangers emanating from the[ir] patient's illness." (*Tarasoff* v. *Regents of University of California*, *supra*, 17 Cal.3d at p. 436; see *id.* at p. 451 (conc. and dis. opn. of Mosk, J.).) In this case, the record establishes that school employees had no knowledge of reckless driving or other misconduct by Lozano. Absent such knowledge, the key basis for imposing liability fails.

Moreover, as a licensed driver, Lozano was presumptively competent to drive. (See Veh. Code, § 12805, subd. (c) ["The department shall not issue a driver's license to, or renew a driver's license of, any person: [¶] . . . [¶] . . . [w]hen it is determined, by examination or other evidence, that the person is unable to safely operate a motor vehicle upon a highway."]; see also *Prichard* v. *Veterans Cab Co.* (1965) 63 Cal.2d 727, 732 [47 Cal.Rptr. 904, 408 P.2d 360] ["The age of a minor who operates a motor vehicle will not excuse him from liability for driving it in a negligent manner, and he will be required to meet the standard established primarily for adults."]; Evid. Code, § 669, subd. (b)(2) [child engaged in activity requiring adult qualifications is held to an adult standard of due care].) "It would be extending the legal consequences of wrongs beyond a controllable degree to hold that the use of an automobile by a licensed operator under these circumstances constitutes an unreasonable risk to others for which . . . schools may be liable." (*Thompson* v. *Ange* (1981) 83 A.D.2d 193 [443 N.Y.S.2d 918, 921] [school authorities were under no duty to shield the general public from a licensed student operating his automobile off school grounds]; cf. *Rogers by and Through Standley* v. *Retrum* (1992) 170 Ariz. 399, 403-404 [825 P.2d 20, 24-25] ["[W]e decline to make high school districts that adopt an open campus policy insurers against the ordinary risks of vehicular injury that students face in driving off school grounds."].)[4]

Additionally, in *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 751 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]), we reiterated that any *Tarasoff* special relationship duty required a finding that the defendant's "conduct placed the specific plaintiff in a position of clearly foreseeable danger." Here, Hoff was a member of the general public who happened to be walking on a public sidewalk when Lozano drove out of the overflow parking lot and lost control of his car. "Unlike members of the general public, in *Tarasoff* and *Johnson*[v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]] the potential victims were specially known and designated individuals." (*Thompson* v. *County of Alameda, supra,* 27 Cal.3d at p. 755.)

From the foregoing, it is clear that the special relationship theory of liability fails at the outset. Thus, there is no need to address the *Rowland* factors. I therefore express no opinion as to the existence or scope of a

---

[4]*Thompson* v. *Ange, supra,* 443 N.Y.S.2d at page 921, involved a similar attempt to impose liability on a school district based on failure to supervise a student driver. Rejecting the claim, the court emphasized: "The schools' awareness of reckless driving by some students and their concern for student safety is not sufficient to show that [the tortfeasor] was anything but the average 17-year old whom the Legislature has determined may be licensed to drive[]. . . . The risk that [he] would be involved in an automobile accident was no greater than the risk incurred by the operation of an automobile by any average 17-year old driver." (*Ibid.*)

possible duty toward nonstudents under different circumstances warranting their full consideration. (Cf. *Thompson* v. *County of Alameda, supra,* 27 Cal.3d at pp. 750-754 [no consideration of *Rowland* factors after court found no special relationship upon which to impose a duty].)

The majority reach a similar result, but do so based on an analogy to the duties arising from the unique "special relationship" between a parent and child. Certainly the duty of school employees should be no greater in scope than that owed by parents. Neither the Court of Appeal nor Hoff has so argued. Nor, as I have stated, should it be greater in scope than that owed by the defendants in *Tarasoff* or *Thompson.* Unlike the majority, however, I would go no further. I thus reject the suggestion, implicit in the majority opinion, that a school employee's duty to supervise a student is analogous to a parent's duty to control a child with regard to third persons. As the majority observe, a parent is liable under the common law if he or she knew or should have known, e.g., based on past misconduct, that it was necessary to control the child and failed to exercise due care to do so. I strongly disagree with the implication that school districts could or should be subject to liability when a school employee *knew or should have known* of a child's tendencies to misbehavior that might injure a nonstudent in this context. None of our precedents supports such a broad expansion of potential tort liability for school districts and their employees. At the very least, the majority's analysis begs the question whether the District would be potentially liable for any future accidents involving Lozano or another student using the parking lots at Vacaville High School.

V

For the foregoing reasons, I conclude that no duty of care extended to Hoff and that, therefore, the District could not be deemed liable, either directly or vicariously, for the conduct of its students. Based on the facts presented in opening argument, nonsuit was properly granted. Accordingly, I would reverse the judgment of the Court of Appeal.

George, C. J., and Baxter, J., concurred.