[Civ. No. 38437. First Dist., Div. Three. May 26, 1977.]

MARK J. ROSS, a Minor, et al., Plaintiffs, v.
CAMPBELL UNION SCHOOL DISTRICT et al.,
Defendants and Appellants;
COUNTY OF SANTA CLARA et al.,
Defendants and Respondents.

**COUNSEL**

Holbrook & Van Noy, Richard E. Holbrook, Rankin, Oneal, Center, Luckhardt, Marlais, Lund & Hinshaw, Edward A. Hinshaw, Randolph M. Paul, Ropers, Majeski, Kohn, Bentley & Wagner, Michael J. Brady and Michael Ropers for Defendants and Appellants.

Wines, Robinson, Wood & Anderson and Archie S. Robinson for Defendants and Respondents.

**OPINION**

**DRAPER, P. J.**—In 1960, the county superintendents of schools of Santa Clara, Santa Cruz and Monterey Counties formed the Tri-County Science and Conservation Education Program. The tri-county program operated a campus at Stevens Creek, Santa Clara County. Early in 1969, the Board of Education of Campbell Union School District approved participation of Dover School in that program, and the Tri-County executive board accepted this additional participant. Mark Ross, a sixth grade student at Dover School, was assigned to the Stevens Creek

campus for a period beginning May 26, 1969. The next day, during the noon hour, Mark fell. He suffered brain damage, resulting in permanent partial paralysis. Complaint for damages alleged inadequate supervision by teachers and staff. Defendants were the three county boards of education, the three counties, Campbell Union School District, and named administrators and instructors at the Stevens Creek campus. The action was dismissed by plaintiffs as to the Counties of Santa Cruz and Monterey. The Santa Cruz board answered as "Santa Cruz County Superintendent of Schools, sued herein as Board of Education of Santa Cruz County," and the Monterey board similarly amended its answer before trial. After commencement of trial, Santa Clara County and its superintendent of schools, the superintendents of Santa Cruz and Monterey Counties, and the Campbell district joined in a stipulation for settlement by payment of $1,200,000 within 60 days. The offer was accepted by plaintiffs and approved by the court. Under the stipulation, the County of Santa Clara and its superintendent, as one unit, was to pay $300,000, and Campbell school district and the superintendents of Santa Cruz and Monterey were to pay $300,000 each. It was specifically agreed that the settlement would be without prejudice to the right of any of the stipulating defendants to assert rights of contribution or indemnity against each other or against the Counties of Santa Cruz and Monterey, and also that each stipulating party retained the right to deny liability under the doctrine of respondeat superior. These issues were tried and judgment was entered holding the four stipulating groups equally liable, and denying claims for contribution or indemnity against each other. But the conclusions of law held that the superintendents of Santa Cruz and Monterey each acted as an employee of his county, and that the judgment debtors had the right, by appropriate action, to recover contributions from those counties. The Campbell district and the county superintendents of Santa Cruz and Monterey appeal. If successful, the appeals would impose sole liability for the settlement upon Santa Clara County and its superintendent, but would leave them free to seek contribution from the Counties of Santa Cruz and Monterey.

By statute, the governing board of any school district is authorized to conduct "programs and classes in outdoor science education and conservation education within or without the boundaries" of the district and to contract with others, including any school district or county "for the joint operation and maintenance of such programs and classes" (Ed. Code, § 6011). The "powers and duties authorized for governing boards" by section 6011 "are powers and duties of the county superintendent of schools" (Ed. Code, § 6015).

"Whenever any public entities enter into an agreement, they are jointly and severally liable upon any liability which is imposed . . . upon any one of the entities . . ." (Gov. Code, § 895.2). "Agreement" as used in section 895.2 is defined as "any . . . agreement under which a public entity undertakes to perform any function, service or act with or for any other public entity or employee thereof with its consent" (Gov. Code, § 895). The Law Revision Commission's comment to that section emphasizes that the definition is "broad."

■  Appellant superintendents urge that they are not public entities, but county employees. Thus, they say, the tri-county agreement into which they entered is not of the type covered by section 895 and therefore does not subject them to the liability imposed by section 895.2. They point to the code section listing "superintendent of schools" as a county officer (Gov. Code, § 24000, subd. (k)).

But the statutory authority to conduct programs in outdoor science and conservation (Ed. Code, § 6011) and to contract with other counties and school districts (subd. (c)) is specifically made a power of county superintendents (Ed. Code, § 6015). Moreover, the board of supervisors may transfer to the county board of education its function of approving the budget of the county superintendent of schools (Ed. Code, § 671) and when a separate budget for "the office of the county superintendent of schools" is so established, all "county employees assigned to the office of the county superintendent of schools shall cease to be employees of the county" and "shall thereafter be paid from the county school service fund" (Ed. Code, § 873). The boards of supervisors of both Santa Cruz and Monterey counties adopted this "single budget" system.

Not the least of the anomalies of the Education Code is its seemingly random assignments of power, many to the county superintendent of schools (e.g., Ed. Code, §§ 811, 815, 821) and others to the county board of education (e.g., Ed. Code, §§ 665, 673, 874.5). It does seem clear that in "single budget" counties the total education function of the county is necessarily vested in an "entity," that entity sometimes being called the county board, and sometimes the county superintendent. Here, the superintendents of both Santa Cruz and Monterey were authorized by statute to enter into the tri-county agreement, and both did so. Moreover, the complaint had named the boards of education of Santa Cruz and Monterey Counties (not the superintendents of schools) as defendants. The Santa Cruz board answered for "defendants Santa Cruz County Superintendent of Schools, sued herein as Board of Education of Santa

Cruz County," and the Monterey board sought and obtained a stipulation similarly changing its designation to "Superintendent of Schools of Monterey County." Under the ambivalent provisions of the Education Code, they thus exercised a choice to designate the superintendents, rather than the boards, as the county education entities which entered into the tri-county agreement. In any event, we should find it difficult to designate as a nonentity an office able to pay $300,000 either directly or through its separate insurance. We conclude that under the facts of this case the county superintendents of Santa Cruz and Monterey are, as found by the trial court, governmental entities within the meaning of section 895.2 of the Government Code.

It follows that these county superintendents, being governmental entities under the facts here presented, are not immune to liability for acts or omissions of others (Gov. Code, § 820.8). The county superintendent is liable, as a school district would be, for negligence in supervision of students on a campus during school hours. (Gov. Code, § 815.2; *Dailey* v. *Los Angeles Unified School Dist.*, 2 Cal.3d 741 [87 Cal.Rptr. 376, 470 P.2d 360]; *Niles* v. *City of San Rafael*, 42 Cal.App.3d 230 [116 Cal.Rptr. 733].)

■ The tri-county agreement clearly is one under which each of the several defendants undertook to perform a "function, service or act with or for" other public entities (Gov. Code, § 895). Thus the four entities are jointly and severally liable (Gov. Code, § 895.2). The tri-county agreement concededly does not provide for "contribution or indemnification" of any of the parties (Gov. Code, § 895.4). It follows that they must share the liability equally and, since they have contributed equally to the settlement, none is entitled to contribution from any of the others (Gov. Code, § 895.6). Section 895.6 applies only to joint agreements "entered into, or renewed, modified, or extended" after 1963 (Gov. Code, § 895.8). But the trial court found that the agreement was "renewed, extended and ratified" each year. In any event, the tri-county agreement was modified before plaintiff's injury in 1969 by the addition of the Campbell district as a party. Thus section 895.6 properly applies.

Appellants also argue that they are entitled to equitable indemnity against Santa Clara because that district was actively negligent, while appellants' negligence was but passive (e.g., *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.*, 13 Cal.3d 622 [119 Cal.Rptr. 449, 532 P.2d 97]). They emphasize that the Stevens Creek campus had been established, and the negligent teacher-supervisor hired, by the Santa Clara superintendent.

But under the tri-county agreement, both the campus and teacher had been assigned to the tri-county program. The negligence conceded by the stipulation was that of the tri-county program, rather than of the individual agreeing entities. That is precisely the situation covered by the statute (Gov. Code, §§ 895-895.6). Absent provision for indemnification in the modified agreement, no claim for indemnity lies.

Appellant superintendent of Santa Cruz argues that section 895.2 cannot apply to it because (1) the agreement is not in writing and (2) is not a joint powers agreement within the meaning of section 6500 et seq. of the Government Code. But there is uncontradicted evidence that a written agreement was executed by the three entities, although it had been lost by the time of trial. Section 895 specifies that "agreement," for purposes of section 895.2 et seq. is one entered into by public entities, "whether . . . expressed by resolution, contract, ordinance or in any other manner provided by law." The Law Revision Commission comment to section 895 emphasizes that the term "agreement" is meant to include "any consensual arrangement." ■ As to the second point, the face of section 895 makes clear that a joint powers agreement under "Chapter 5 (commencing with Section 6500)" is but one of the many agreements covered by the definition, and that failure of the agreement to comply with that chapter by no means forecloses application of section 895 et seq.

■ The trial court, however, did not stop after imposing liability upon the county superintendents of Santa Cruz and Monterey, Campbell district and the County and superintendent of Santa Clara. Rather, it specifically found that the Santa Cruz and Monterey superintendents were employees of their respective counties (finding 42) and concluded that the two counties were liable for the respective shares of their county superintendents. But the two counties, originally joined as defendants, had been dismissed. Judgments obviously cannot run against non-parties. Moreover, the two counties were in no way parties to the stipulation which fixed the amount of the judgment. In any event, having held the two superintendents to be proper parties to the tri-county agreement as governmental entities, it would be wholly inconsistent to treat them as mere county employees, whose acts somehow bound their respective counties. Moreover, if they were merely county employees they would enjoy immunity from vicarious liability for the acts of others (Gov. Code, § 820.8). These portions of the findings and conclusions must be stricken. Of course, if the two superintendents can show direct participation by their counties in the execution or performance of the

tri-county agreement as principals for whom the superintendents were but agents, they may seek to establish their rights in a separate action. But the case at bench cannot determine those rights.

The findings of fact are modified by striking therefrom finding 42. The conclusions of law are modified by striking therefrom conclusions 19, 21 and 22. As so modified, the judgment is affirmed. Costs on appeal are awarded to respondent.

Elkington, J.,* and Good, J.,† concurred.

Petitions for a rehearing were denied June 24, 1977, and appellants' petitions for a hearing by the Supreme Court were denied July 21, 1977.

---

*Assigned by the Chairman of the Judicial Council.

†Retired Judge of the superior court, assigned by the Chairman of the Judicial Council.