[No. H027670. Sixth Dist. Feb. 22, 2006.]

AUTHORITY FOR CALIFORNIA CITIES EXCESS LIABILITY, Plaintiff and Appellant, v.
CITY OF LOS ALTOS, Defendant and Respondent.

1208

**Counsel**

Pollak, Vida & Fisher, Girard Fisher, Daniel P. Barer and Matthew H. Fisher for Plaintiff and Appellant.

Needham, Davis, Kirwan & Young, Mark E. Davis and Marc J. Cardinal for Defendant and Respondent.

## OPINION

**MIHARA, Acting P. J.**—On cross-motions for summary judgment, the superior court ruled that defendant City of Los Altos (Los Altos) was not obligated under Government Code sections 895 and 895.2 to pay money to plaintiff Authority for California Cities Excess Liability (ACCEL) based on a document signed by Los Altos's chief of police. The court entered judgment for Los Altos. On appeal, ACCEL claims that the document was an "agreement" within the meaning of Government Code section[1] 895 which obligated Los Altos to pay money to it. We conclude that Los Altos established that the document was not an agreement within the meaning of section 895. We therefore affirm the judgment.

## I. Background

The police departments in Mountain View, Palo Alto, and Los Altos "worked very closely together" on "a regular basis" to provide personnel to service emergency calls in each other's jurisdictions when help was needed. In early 1992, the chiefs of police of Los Altos, Palo Alto, and Mountain View signed a document (the 1992 document) in which they recognized that their police departments "have combined resources to form a North County Regional Hostage Negotiations (HNT) and Special Weapons and Tactics (SWAT) Team [hereafter the Team]."

The 1992 document specified the composition of the Team and set forth guidelines for the Team's utilization, command and control, callout procedures, and training. It stated that the Team "will train as a group during four 40 hour training sessions per year" and "[t]he SWAT Lieutenants will be responsible for planning and supervising the training sessions." The 1992 document ended with this paragraph: "Changes and additions to this order will require the approval of all parties involved. This agreement and the provisions of this order will remain in effect until rescinded by any one of the parties." Lucy A. Carlton, Los Altos's chief of police from 1991 to 2001, signed the 1992 document.

The Team already existed when Carlton signed the 1992 document, and her predecessors had signed similar documents in the past. Los Altos permitted its department heads, such as Carlton, to authorize "training as they saw fit" without city council approval as long as the training fell within the department's budget. Los Altos did not permit its department heads to authorize "anything that would have cost outside of the budget," "anything that would basically bind future councils," or "anything that would incur liability on

---

[1] Subsequent statutory references are to the Government Code unless otherwise specified.

behalf of the city, other than day-to-day operations" without city council approval. To the extent that the 1992 document authorized training for police officers within Carlton's police department budget, it was within Carlton's authority to sign it. Los Altos's city council never considered or approved the 1992 document or the Team's training sessions.

Joint police training sessions were beneficial because Los Altos was a "very small department" and lacked the resources to provide that type of training and "experience" on its own. Los Altos police officers participated in the Team's training sessions in accordance with the 1992 document, but none of the Los Altos members of the Team ever responded to any actual situations.

In May 1994, Theodore Brassinga, a Palo Alto reserve police officer, was accidentally shot to death by Gregory Acton, a Mountain View police officer, during one of the Team's training sessions in Gilroy. (See *Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 205–207 [77 Cal.Rptr.2d 660].) Brassinga's heirs sued Mountain View and Acton. (*Brassinga*, at p. 202.)

In August 2001, ACCEL filed a "complaint for money" against Los Altos. The operative complaint is ACCEL's second amended complaint, filed in July 2002. ACCEL alleged that the 1992 document obligated Los Altos under sections 895 and 895.2 to pay a pro rata share of the settlement that Palo Alto and Mountain View had negotiated with Brassinga's heirs.

In August 2003, ACCEL filed a motion for summary judgment. ACCEL asserted that it was undisputed that the 1992 document *was* an "agreement" under section 895 that bound Los Altos to contribute to the settlement. Los Altos filed a motion for summary judgment in which it argued that it was undisputed that the 1992 document *was not* an "agreement" within the meaning of section 895 and therefore did not bind Los Altos.

In March 2004, the superior court granted Los Altos's motion and denied ACCEL's motion. "Based on the undisputed material facts the Court finds that Los Altos is a general law city. [Citation.] As a general law city only the City Council may enter and approve agreements that bind the City or expose the City to liability including agreements pursuant to Government Code section 895. [Citation.] Here, the police chief (appointed by the City Manager) had authority to set department procedures and conduct officer training. [Citation.] As part of her authority, the police chief entered into a protocol for training. [Citation.] However, the undisputed facts support that the City Council did not approve the 'protocol' by resolution, contract, ordinance or in any other manner provided by law. [Citation.] Furthermore, the police chief did not have the authority to enter into agreements pursuant to Government

Code section 895 without City Council approval. [¶] The protocol was not an agreement entered into with the City's consent required pursuant to Government Code section 895. Therefore, the protocol was not an agreement as defined by Government Code section 895." The court entered judgment for Los Altos, and ACCEL filed a timely notice of appeal.

## II. Analysis

■ The liability of a public entity is restricted by statute. Like any other public entity, Los Altos may be held liable for an injury only if a statute so provides. "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (§ 815, subd. (a).) As a general law city, Los Altos may be held liable on a contract only if the contract is in writing, approved by the city council, and signed by the mayor or by another city officer designated by the city council in an ordinance. (*G. L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1093 [93 Cal.Rptr.2d 292]; § 40602.)

It is undisputed that the 1992 document was not approved by Los Altos's city council. Consequently, Los Altos could be liable for Brassinga's death only if a statute so provided. ACCEL relies solely on section 895. Section 895 defines the type of "agreement" upon which the liability described in sections 895.2 and 895.6 is premised.

"As used in this chapter 'agreement' means a joint powers agreement entered into pursuant to Chapter 5 (commencing with Section 6500) of Division 7 of Title 1 of the Government Code, an agreement to transfer the functions of a public entity or an employee thereof to another public entity pursuant to Part 2 (commencing with Section 51300) of Division 1 of Title 5 of the Government Code, *and any other agreement under which a public entity undertakes to perform any function, service or act with or for any other public entity or employee thereof with its consent, whether such agreement is expressed by resolution, contract, ordinance or in any other manner provided by law*; but 'agreement' does not include an agreement between public entities which is designed to implement the disbursement or subvention of public funds from one of the public entities to the other, whether or not it provides standards or controls governing the expenditure of such funds." (§ 895, italics added.)

■ Sections 895.2 and 895.6 provide for the liability of a public entity that has entered into an "agreement" within the meaning of section 895. "Whenever any *public entities* enter into an agreement, *they* are jointly and severally liable upon any liability which is imposed by any law other than this

chapter upon any one of the entities or upon any entity created by the agreement for injury caused by a negligent or wrongful act or omission occurring in the performance of such agreement." (§ 895.2, italics added.) "Unless *the public entities that are parties to an agreement* otherwise provide in the agreement, if a public entity is held liable upon any judgment for damages caused by a negligent or wrongful act or omission occurring in the performance of the agreement and pays in excess of its pro rata share in satisfaction of such judgment, such public entity is entitled to contribution from each of the other public entities that are parties to the agreement. The pro rata share of each public entity is determined by dividing the total amount of the judgment by the number of public entities that are parties to the agreement. The right of contribution is limited to the amount paid in satisfaction of the judgment in excess of the pro rata share of the public entity so paying. No public entity may be compelled to make contribution beyond its own pro rata share of the entire judgment." (§ 895.6, italics added.)

ACCEL concedes that there is no ordinance, resolution, or contract expressing Los Altos's "agreement" to the 1992 document. Its sole contention is that *Los Altos's agreement* to have joint police officer training sessions with Palo Alto and Mountain View is "expressed" in a "manner provided by law" in the 1992 document executed by Carlton.

■ "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. . . . We begin by examining the statute's words, giving them a plain and commonsense meaning. . . . We do not, however, consider the statutory language 'in isolation.' . . . Rather, we look to the 'entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . .' . . . That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." . . .' . . . We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129], citations omitted.)

■ Section 895 is not ambiguous. The 1992 document was not a joint powers agreement or an agreement to transfer functions. It follows that for the 1992 document to qualify as an agreement under section 895, it had to be one "under which a public entity undertakes to perform any function, service or act with or for any other public entity or employee thereof with its consent, whether such agreement is expressed by resolution, contract, ordinance or in any other manner provided by law . . . ." (§ 895.)

The initial portion of this phrase restricts the statute's application to agreements by which a "public entity" undertakes to perform an act "with or

for any other public entity . . . with its consent." Sections 895.2 and 895.6 relate to the liability of the same "public entity" referenced in section 895. ACCEL has sued only *Los Altos*, and ACCEL claims that *Los Altos* is liable under sections 895.2 and 895.6. Hence, the public entity referenced in section 895 must in this case also be *Los Altos*.

It is the latter portion of the phrase in section 895 that is the crux of our concern. Section 895 applies only to an "agreement . . . expressed by resolution, contract, ordinance or in any other manner provided by law." ACCEL concedes that no resolution, contract, or ordinance expressed Los Altos's agreement to the 1992 document. It argues that *Carlton*, as Los Altos's police chief, had the power to agree to joint police officer training sessions, but this argument begs the question. It is not relevant whether Carlton had the power to agree *as police chief* that her police officers should participate in such training sessions. For section 895 to apply here, Carlton's execution of the 1992 document had to be in a "manner *provided by law*" for the expression of *Los Altos's* agreement. (§ 895, italics added.) After all, section 895 applies only to the *public entity's* agreement, and the only public entity at issue here is Los Altos.

ACCEL contends that the city council's approval is necessary only for a contract, and section 895 allows an agreement to be expressed in a contract "*or* in any other manner provided by law." (Italics added.) Since no statute or ordinance authorized Carlton to act on behalf of Los Altos, ACCEL purports to find such "law" in the common law of "joint enterprise liability." ACCEL acknowledges that "joint enterprise liability" is a common law doctrine that does not apply to public entities, but it argues that section 895 was intended to "serve the same purposes as the joint liability doctrine" and therefore extends liability in the same fashion. ACCEL maintains that "liability flows to the joint undertakers regardless of technical deficiencies in the underlying agreement."

■ This contention is without merit. We are bound by the language of section 895 itself. "This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed. This court is limited to interpreting the statute, and such interpretation must be based on the language used." (*Seaboard Acceptance Corp. v. Shay* (1931) 214 Cal. 361, 365 [5 P.2d 882].) We are not permitted to expand the statute's plain language to incorporate broad common law concepts that the Legislature did not mention. ACCEL's proposed interpretation simply is not rooted in the language of section 895. ■ The common law of joint enterprise liability does not provide any "law" regarding the *manner* by which a *public entity* may *express* its *agreement*. A law regarding the manner of expression of a public entity's agreement is the only type of "law" to which this language in section 895 refers.

■ ACCEL has failed to identify any *law*, such as a city charter provision (had Los Altos been a charter city) or an ordinance (in a general law city such as Los Altos) or a state statute, that authorizes a police chief to execute agreements on behalf of a city. A charter provision or ordinance that authorized the police chief to execute certain agreements on behalf of the city would be a "law" providing for the expression of the city's agreement in a manner other than a contract, resolution or ordinance approved by the city council. In the absence of such a "law," section 895 applies only to an agreement expressed in a contract, resolution or ordinance. Consequently, section 895 does not apply to the 1992 document.

ACCEL relies on *Ross v. Campbell Union School Dist.* (1977) 70 Cal.App.3d 113 [138 Cal.Rptr. 557]. In *Ross*, the superintendents of schools in Santa Clara, Santa Cruz and Monterey counties entered into an agreement establishing the "Tri-County Science and Conservation Education Program." A student in the program in Santa Clara County was injured. One issue on appeal was whether the agreement fell within section 895. The court found that the agreement fell within section 895 because the superintendents were "public entities" *statutorily authorized* to enter into such agreements. (*Ross*, at pp. 116–119.) Obviously *Ross* is inapposite here. ACCEL has not sued Carlton, and no statute or other law authorized Carlton to execute agreements on behalf of Los Altos.

ACCEL also cites *Gonzales v. State of California* (1972) 29 Cal.App.3d 585 [105 Cal.Rptr. 804]. The plaintiff in *Gonzales* had been struck by a school bus, and he claimed that the state and the school district were jointly liable under sections 895 and 895.2 because they had agreed that the district would provide transportation. (*Gonzales*, at p. 592.) Since the district was authorized by statute to provide transportation itself and it was not providing transportation "with or for" the state, section 895 was not applicable. (*Gonzales*, at pp. 592–593.) *Gonzales* tells us nothing about the only issue in this case: whether Carlton's execution of the 1992 document was a "manner provided by law" for the expression of Los Altos's agreement.

Nor is there any merit in ACCEL's attempt to rely on sections 8616 and 8617. Section 8616 is applicable only during a state of emergency. Section 8617 is applicable when there is no state of emergency, but it provides only that "state agencies and political subdivisions have authority to exercise mutual aid powers in accordance with the Master Mutual Aid Agreement and local ordinances, resolutions, agreements, or plans therefor." (§ 8617.) Nothing in section 8617 provides a legal basis for the proposition that a police chief may execute an agreement on behalf of a city.

Penal Code section 830.1, subdivision (a)(2) provides a police chief with the power to grant consent to peace officers of another city to act in her city, but

this statute provides no authority for a police chief to enter into agreements of any other kind on behalf of her city. The 1992 document was not primarily intended to grant consent to Palo Alto or Mountain View officers to act in Los Altos. And even if it had been, it would have been authorized by Penal Code section 830.1, subdivision (a)(2) only to that extent. The underlying events in this case did not occur in Los Altos, so Penal Code section 830.1, subdivision (a)(2) is inapplicable. None of the other statutes cited by ACCEL (Gov. Code, §§ 36501, 38630) provides the police chief of a city with the authority to execute an agreement on behalf of the city.

We do not agree with ACCEL that our interpretation of section 895 renders "or in any manner provided by law" surplusage. This language in section 895 recognizes that a public entity may provide by statute, charter or ordinance (that is, by "law") for another manner of expression of its agreements. Had Los Altos provided by "law" that *its police chief's execution* of an agreement such as the 1992 document was a valid manner of expression of *Los Altos's* agreement, section 895 would apply to the 1992 document even though that document was not a contract, resolution, or ordinance approved by the city council. The fact that no "law" so provided necessarily means that Carlton's execution of the 1992 document did *not* constitute *Los Altos's* agreement to the terms of that document and did not bring that document within section 895's definition of "agreement."

■ ACCEL's final claim is that Los Altos should be estopped from claiming that the 1992 document was not an agreement within the meaning of section 895.[2] "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

---

[2] ACCEL's reply brief adds a new argument. It asserts that Los Altos admitted in its amicus curiae brief in *Brassinga* that it shared control of the Team. For sound policy reasons, we disregard claims raised for the first time in an appellate reply brief where the appellant makes no attempt to show good cause for failing to raise the issue in the opening brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765 [60 Cal.Rptr.2d 770].) The amicus curiae brief was attached to various pleadings below, so ACCEL lacks good cause for its failure to raise this issue in its opening brief. Furthermore, control of the Team is irrelevant to the sole issue in this case: whether Carlton's execution of the 1992 document was a legally authorized manner of expressing Los Altos's agreement to the terms of that document.

ACCEL did not defend against Los Altos's summary judgment motion on this ground.[3] It did not establish or attempt to establish the elements of estoppel in opposition to Los Altos's summary judgment motion. ACCEL produced no evidence that Los Altos (rather than Carlton) intended to induce Palo Alto's and Mountain View's reliance on the 1992 document or that Palo Alto and Mountain View were ignorant of the fact that Carlton, rather than Los Altos, had executed the 1992 document. Indeed, there is no evidence that the Los Altos City Council was even aware of the 1992 document. Because ACCEL failed to establish or raise triable issues of fact regarding the elements of its until-now-unmentioned estoppel issue, its appellate estoppel argument must fail.

## III.   Disposition

The judgment is affirmed.

McAdams, J., and Duffy, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 24, 2006, S142435.

---

[3] We would be inclined to find that ACCEL forfeited this issue by failing to bring it up below, but Los Altos does not argue forfeiture in its appellate response brief.