Filed 11/7/13  P. v. Willis CA2/5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MANUEL WILLIS,<br><br>  Defendant and Respondent. | B245061<br><br> (Los Angeles County Super. Ct.<br>  No. SA078622)<br><br>**ORDER MODIFYING OPINION<br> AND DENYING REHEARING<br> [NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on October 16, 2013, and not certified for publication, be modified as follows.

At the top of page 6, under subheading Juror 3A of the Discussion, the first full paragraph is deleted and the following paragraph is inserted in its place:

The trial court initially found untimely defendant's motion as to Juror 3A because the juror had already been excused well before defendant made a motion as to Jurors 3A and 12B.  The parties disagree about whether defendant adequately preserved the issue of timeliness for this appeal.  Contrary to California Rules of Court, rule 8.204(a)(1)(B), defendant originally raised the issue of timeliness in a footnote in his opening brief.  We

decline to address the issue of timeliness, because ultimately, the court did make findings identifying race-neutral reasons for excusing Juror 3A.  Because defendant does not offer a convincing argument that the reasons are invalid or pretextual, we find the court's implied denial of defendant's *Batson/Wheeler* motion as to Juror 3A is supported by substantial evidence.

There is no change in the judgment.  The petition for rehearing is denied.

_____

TURNER, P. J.                    KRIEGLER, J.                    KUMAR, J.[*]

_____

[*]      Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 10/16/13 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE, | B245061 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA078622) |
| v. | |
| MANUEL WILLIS, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Antonio Barreto, Jr., Judge. Affirmed and remanded.

Law Offices of John F. Schuck and John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and Esther P. Kim, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Manuel Willis of three counts of second degree robbery (Pen. Code, § 211) [1] but found not true allegations he was armed with and personally used a handgun (§§ 12022, subd. (a)(1), 12022.5, subd. (a)). [2] In a separate proceeding, the trial court found defendant had suffered a prior conviction under the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), a prior serious or violent conviction (§ 667, subd. (a)), and served prior prison terms (§ 667.5, subds. (a)-(b)). Defendant was sentenced to a total term of 15 years in state prison, consisting of the upper term in count 1 of five years, doubled pursuant to the three strikes law, plus a five-year enhancement under section 667, subdivision (a). Sentencing on the prior prison term findings was stayed.

In his timely appeal, defendant contends: (1) he was denied his state and federal constitutional rights to a representative and impartial jury because the trial court erroneously denied his motions under *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*) to prevent the prosecution from striking five Black jurors; and (2) the trial court erroneously denied his request to strike a prior serious and violent felony conviction allegation pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). We affirm the judgment but remand with directions to correct errors in the abstract of judgment.

## FACTS

Defendant and another man robbed a Metro PCS cell phone store in Hawthorne the evening of August 27, 2011. Police focused on defendant as a suspect because he left his phone behind in the store and his fingerprints were on a contract he had been filling out before the robbery. Defendant and his accomplice entered the store, and defendant pretended to be interested in purchasing a new phone. Two employees, a male and a

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The same jury acquitted defendant's cousin Brandon Willis on all three counts of robbery.

2

female, were at the counter, and a third employee was in the renovation area in the back of the store.

While defendant was filling out a contract for a new phone, he pulled his shirt up and showed the female employee what appeared to be a gun in his waistband. Defendant told the employee to "get [her] hands away from the keyboard [because he was] about to rob the place." She complied. Defendant gathered the three employees and directed one of the male employees to take him to the safe at the back of the store. Defendant and the employee were unable to open the safe because the employee did not know the combination. The employee was afraid because defendant started holding his right hand inside his pants as if he had a gun and said, "Don't make me shoot you."

Defendant testified the gun was not real. It was an "airsoft gun" that looked real, and that he was "high" on drugs the day of the robbery. He admitted showing the gun to the employee so he would comply. Defendant pulled the gun out from his waistband but concealed the front of the gun with his finger so that the employee would not see the orange tip, which would have shown the gun was a replica. Defendant told his accomplice to "smoke the bitch" if the female employee moved. Two customers entered the store during the robbery but left abruptly when defendant looked out of the back office and said, "You all just got caught up in some shit."

Defendant filled a bag with about $10,000 worth of cell phones that were kept in the back office. Defendant walked the male employee back to the front of the store and directed the employees to open the cash registers, telling the female employee, "Hurry up . . . don't make me want to shoot you." Defendant and his accomplice left the store with the cell phones, blue tooth devices, and approximately $2,000 in cash.

# DISCUSSION

## *Batson/Wheeler* **Motions**

Defendant contends the trial court committed reversible error under *Batson/Wheeler* by finding no prima facie case of discrimination based on the prosecutor's use of peremptory challenges to excuse a total of five Black jurors during jury selection. We disagree.

The standard for reviewing a *Batson/Wheeler* motion is well established. State and federal constitutional authority imposes a three-step inquiry: "First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge based on race. Second, if the showing is made, the burden shifts to the prosecutor to demonstrate that the challenges were exercised for a race-neutral reason. Third, the court determines whether the defendant has proven purposeful discrimination. The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. (*Rice v. Collins* (2006) 546 U.S. 333, 338.) The three-step procedure also applies to state constitutional claims. [Citations.]" (*People v. Lenix* (2008) 44 Cal.4th 602, 612-613 (*Lenix*).)

The trial court's determination that the prosecution's motive for the challenge was nondiscriminatory presents a question of fact, which we review using the substantial evidence standard. (*Hernandez v. New York* (1991) 500 U.S. 352, 364–365; *Lenix*, *supra*, 44 Cal.4th at pp. 613-614.) Assessing the credibility of a prosecutor's race-neutral explanations is uniquely a function of the trial court. The court can measure the credibility of a proffered rationale by a number of factors, including the prosecutor's demeanor, the reasonableness of the explanations, and whether they have some basis in accepted trial strategy. (*Ibid.*; *Miller-El v. Cockrell* (2003) 537 U.S. 322, 338-339 (*Cockrell*).)

The trial court ruled that defendant failed to make a prima facie case of purposeful discrimination as to each of his *Batson/Wheeler* challenges. With one exception,[3] the prosecutor stated on the record her race-neutral reasons for excusing each juror. After jury selection but before testimony began, the court restated the basis for denying defendant's four *Batson/Wheeler* motions, describing race-neutral reasons why each juror was excused. The court also noted the composition of the final jury, which included three Black women and one Black man. In the court's view, the number of Blacks on the final jury was "disproportionate as to the population, and disproportionate as to the number of people [the court] had in the entire voir dire to begin with."

Because the prosecutor identified nondiscriminatory reasons for exercising each peremptory challenge, it is unnecessary to determine whether defendant established a prima facie showing of a discriminatory purpose. (*People v. Riccardi* (2012) 54 Cal.4th 758, 786.) "'Accordingly, we express no opinion on whether defense counsel established a prima facie case of discrimination and instead skip to *Batson's* third stage to evaluate the prosecutor's reasons for dismissing [the] African-American prospective jurors.' [Citations]" (*Id.* at p. 787.)

We examine the identified reasons for challenging the five excused Black jurors with these principles in mind. We find no merit to defendant's contentions that the reasons were pretextual or reflected a discriminatory purpose.

_____

**3** The prosecutor did not offer any reasoning for excusing one juror because the court found defendant's motion untimely as to that juror. Later, the trial court identified its own race-neutral reasons for why the juror could be excused.

## *Juror 3A*[4]

The trial court initially found untimely defendant's motion as to Juror 3A because the juror had already been excused well before defendant made a motion as to Jurors 3A and 12B. The parties disagree about whether defendant adequately preserved the issue of timeliness for this appeal. However, defendant did not raise the issue of timeliness in his opening brief and only argued the prosecutor's dismissal of Juror 3A was racially motivated. Absent a showing of good cause, we will not consider an argument raised for the first time in an appellate reply brief. (*Authority for California Cities Excess Liability v. City of Los Altos* (2006) 136 Cal.App.4th 1207, 1216, fn. 2.) Ultimately, the court did make findings identifying race-neutral reasons for excusing Juror 3A. Because defendant does not offer a convincing argument that the reasons are invalid or pretextual, we find the court's implied denial of defendant's *Batson/Wheeler* motion as to Juror 3A is supported by substantial evidence.

The prosecutor did not offer any reason for excusing Juror 3A, but the trial court identified two different race-neutral reasons, impliedly finding defendant failed to make a prima facie case that the prosecutor's peremptory challenge was racially motivated. Juror 3A was a Black female attorney who clerked for a summer in the public defender's office. A peremptory challenge may be exercised where the juror's responses suggest a pro-defense or pro-prosecution bias. (*Wheeler*, *supra*, 22 Cal.3d at p. 275.) Juror 3A also acted strangely, fidgeting and unable to sit still. According to the court, "Some people are fidgety, but that manner of acting standing alone made her stand out, in the court's eye, from anybody else." A juror may be validly excused based upon body language, facial expressions, hunches, and even for arbitrary reasons as long as those reasons are not discriminatory. (See *People v. Turner* (1994) 8 Cal.4th 137, 165

---

[4] We refer to the excused jurors simply as "jurors," rather than as "prospective jurors," for the sake of brevity and clarity. We also identify jurors by the number where they were seated in the jury box, together with a letter to signify whether the juror replaced a prior juror in that seat. So, for example, Juror 12B took seat 12 in the jury box after Juror 12A was excused.

(*Turner*), overruled on different grounds in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5; *Wheeler*, *supra*, at p. 275.)  Both of the court's observations about Juror 3A provide substantial evidence of valid, race-neutral reasons for excusing that juror.

### Juror 12B

Juror 12B is a Black man who had previously served on a civil jury that was unable to reach a verdict, as well as on a hung criminal jury.  Juror 12B had been in the minority on both cases.

The prosecutor dismissed Juror 12B based on his prior experience on civil and criminal juries that had been unable to reach verdicts and because Juror 12B was in the minority on both cases.  The trial court stated the same reason for denying the motion. Prior experience on a hung jury is a valid reason for excusing a potential juror, as it "constitutes a legitimate concern for the prosecution, which seeks a jury that can reach a unanimous verdict." (*Turner, supra,* 8 Cal.4th at p. 170.)  The prosecutor also explained, "He sat there during this entire process just looking forward, looking very upset about being here, and not participating other than the fact that he answered [the court's] questions."  Absent evidence to the contrary, this is also a valid, race-neutral reason for excusing a juror.  (See, e.g., *People v. Reynoso* (2003) 31 Cal.4th 903, 925-926 (*Reynoso*) [accepting prosecutor's demeanor-based reason for excusing a juror "were neither inherently implausible, nor affirmatively contradicted by anything in the record"].)

### Juror 1A

Juror 1A is a Black woman.  Her responses to questions posed by the trial court were brief, but they revealed a possible bias against the police.  When asked whether anyone close to her had a connection with the criminal justice system, she responded, "Three of my family members are involved in a crime."  She simply responded "yes" when the court asked her whether she thought any of those people were not treated fairly

by law enforcement. Her responses to the court's efforts to explore her concerns demonstrate that she was not forthcoming with details:

"Q: Okay. Let's talk about that. Is that a family member, or friend, or what?

"A: Family member.

"Q: Okay. You don't have to tell me the name of the person, just how close a relative to you?

"A: Close.

"Q: Sorry?

"A: My daughter's father.

"Q: Okay. And what was it about what happened there, you know, that made you think, or somebody think, that maybe that person wasn't treated fairly? Let me try it another way. What kind of crime was it?

"A: It was a weapons charge.

"Q: Okay. Now, was it a situation where the person felt that possessing the weapon, if that's what they did, wasn't really a crime? Or did they feel the police searched them improperly in order to find it? What was it about?

"A: The search.

"Q: Okay. Thank you. All right."

Defense counsel later asked the entire panel some questions about the truthfulness of police officers. "Does anyone here believe . . . that a police officer could also lie?" "Does anyone here have a problem thinking that an officer might lie?" Juror 1A did not respond verbally.

Defendant argued to the trial court and also contends on appeal that the prosecutor's failure to pose any questions to Juror 1A is evidence of discriminatory intent. The court compared Juror 1A's answers to the answers of other jurors and found no prima facie case that the prosecutor's peremptory challenge was racially motivated. A party's failure to "engage in meaningful voir dire" on a topic important to that party can suggest the stated reason for dismissing a juror is pretextual. (*People v. Lewis* (2008) 43 Cal.4th 415, 476 (*Lewis*), citing *Miller-El v. Dretke* (2005) 545 U.S. 231, 246.) The court

may nevertheless find a party's stated reasons for excusing a juror credible when the party has not asked any questions of the juror. (*Lewis, supra*, at p. 477 [prosecutor could reasonably believe that voir dire would not alleviate concerns about juror].)

The prosecutor did not ask Juror 1A any questions, but she did have an opportunity to observe the juror's responses to questions posed by the trial court and defense counsel. She explained she excused Juror 1A based on the juror's "overreaction" to defense counsel's question about whether police officers lie. "Her reaction was such that she believes, of course police lie . . . . It was more like police are liars." The court asked for more detail, and the prosecutor's law clerk explained, "She rolled her eyes and kind of moved her head back three times in a much more distinctive way than any other juror who responded to the language."

The prosecutor also explained that Juror 1A appeared to feel very strongly that her daughter's father was mistreated by the system and hesitated when asked whether close friends or relatives had been involved in the criminal justice system. Bad feelings about the police can be a valid reason for exercising a peremptory challenge. (*People v. Johnson* (1989) 47 Cal.3d 1194, 1215.) In fulfilling its obligation to make a sincere and reasoned effort to evaluate the prosecutor's explanation, "the trial court is not required to make specific or detailed comments for the record to justify every instance in which a prosecutor's race-neutral reason for exercising a peremptory challenge is being accepted by the court as genuine. This is particularly true where the prosecutor's race-neutral reason for exercising a peremptory challenge is based on the prospective juror's demeanor, or similar intangible factors, while in the courtroom." (*Reynoso, supra,* 31 Cal.4th at p. 919.)

Comparing Juror 1A's answers to the answers given by other jurors, the trial court concluded there was no purposeful discrimination. Before trial started, the court reiterated its finding of no prima facie case, stating it believed the prosecutor's explanation that the challenge was based on the juror's skepticism of law enforcement and her physical demeanor.

### *Juror 1C*

Juror 1C[5] is a Black woman.  When asked whether anything made her feel like she could not listen to the evidence and make a decision without favoring one side or another, she responded that she believed her cousin was wrongly considered an accomplice in a robbery.  Her cousin was the driver of the vehicle but purportedly did not have the same intent to commit the robbery.  The trial court explained the concept of aiding and abetting and asked Juror 1C if the information changed her opinion of whether her cousin was treated fairly.  Juror 1C responded, "Not really."

The prosecutor explained she exercised a peremptory challenge based on Juror 1C's experience and feelings about her cousin's case.  "She still believed—believes that her cousin was wrongly charged and convicted.  [¶]  . . . And even after the [trial] court explained to her how a driver . . . could be guilty . . . of aiding and abetting, or of anything that was charged against the actual perpetrators of the crime, she still did not or could not agree with the court.  I think she understands the concept of aider and abettor, but I think her feelings are really strong about what happened to her cousin."  Despite efforts to explain to the juror the aider and abettor theory of liability, the court noted that Juror 1C "still indicated she felt it was unfair that her cousin was treated the way she was in that matter."

Part of the prosecution's strategy at trial was to demonstrate that defendant's accomplice aided and abetted defendant.  A juror's feelings about the fairness of that theory of criminal liability would be a valid, race-neutral reason for exercising a peremptory challenge.  (See *People v. Calvin* (2008) 159 Cal.App.4th 1377, 1386 ["skepticism about the fairness of the criminal justice system is a valid ground for excusing jurors"].)  The credibility of a prosecutor's race-neutral explanation is measured by a number of factors,  including "whether the proffered rationale has some basis in accepted trial strategy." (*Cockrell, supra,* 537 U.S. at p. 339.)

---

5  Juror 1C was originally in seat 15 when the court questioned her, and so the record identifies this juror interchangeably as Juror 1 and Juror 15.

### Juror 9A

Juror 9A is a Black woman whose son had spent 13 months in custody for a weapon possession charge. She claimed that her son was "in the wrong place at the wrong time." Pressed further, she stated that she blamed the police for her son's conviction. When the prosecution asked her if she thought her son was mistreated by the police, she answered "I never said that he was mistreated, but I felt like they—he should have—he shouldn't have taken the blame for what wasn't been up to him."

Juror 9A felt law enforcement officers were disrespectful on a separate occasion when they chased an intruder into her apartment and did not give her sufficient explanation as to why they were chasing the intruder. The trial court noted this "in and of itself . . . [was] a ridiculous comment" since one would assume law enforcement officers would be called if someone intruded into their home.

The prosecution unsuccessfully moved to excuse Juror 9A for cause and then exercised a peremptory challenge. The prosecutor referred back to her motion to excuse the juror for cause to give a race-neutral reason for exercising the peremptory challenge. She was concerned that Juror 9A was "clearly in some kind of denial about her son's illegal activities" and "blames the police for her son being in jail." A juror's feelings and responses about a close relative's negative interactions with law enforcement can be a valid, race-neutral reason for a peremptory challenge. (*People v. Adanandus* (2007) 157 Cal.App.4th 496, 509 [prosecutor entitled to excuse juror from panel based on inference drawn from juror's responses to questions about her son's criminal history that she was not being forthright].)

The trial court validly denied each of defendant's four *Batson/Wheeler* motions. Substantial evidence supports the court's findings that the prosecutor was not motivated by race when she exercised a peremptory challenge as to the five Black jurors described above.

11

## *Romero* **Motion**

Defendant contends the trial court abused its discretion in failing to strike his prior conviction for attempted robbery pursuant to section 1385 and *Romero*, *supra*, 13 Cal.4th 497. Defendant argues he falls outside the spirit of the three strikes law because his prior strike took place almost nine years earlier, and his actions in both the prior and current offenses were driven by a painful medical condition, neurofibromatosis. We find no merit in this argument.

Section 1385 provides the trial court with discretion to strike a prior felony conviction allegation in furtherance of justice. (*Romero*, *supra*, 13 Cal.4th at pp. 529-530.) The court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) A trial court must enter a statement of reasons in the minutes of the court when dismissing a prior conviction; however, it is not required to "'explain its decision not to exercise its power to dismiss or strike.'" (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).)

This court reviews a ruling upon a motion to strike a prior felony conviction under a deferential abuse of discretion standard. (*Williams*, *supra*, 17 Cal.4th at p. 162.) The defendant bears the burden of establishing the trial court's decision was unreasonable or arbitrary. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978 [presumption that trial court acts to achieve lawful sentencing objectives].) "Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling . . . ." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

12

The trial court's focus was "to try and determine from the defendant's prior conduct and what happened over time leading up to this case and what happened in this case, whether he falls outside the spirit of the law." Defendant was convicted of attempted robbery in 2003 and then went to prison again on a felony conviction for possession of narcotics in 2005. The court noted that defendant committed the current offense while still on parole from his 2005 conviction, and he was having other problems on parole. According to his parole officer, defendant was associating with known gang members and tested positive for phencyclidine (PCP).

Considering the facts of the current offense, the trial court emphasized that defendant "was the primary actor in this case. He was the one that was . . . feigning the presence of a weapon. He was the one that took possession of the property from the victims, and apparently he's the one that distributed the property . . . ." The court disagreed with defense counsel's characterization of the case as unsophisticated, pointing out that it is not a sign of lack of sophistication "when you're driving around looking for a place to hit with the express intent that you are going to commit a robbery. And you're bringing with you what, apparently was a fake gun in order to instill fear in the people. And then rounding them up in order to make good your crime and your escape."

The trial court also considered and rejected the argument that defendant's actions were driven by his drug addiction: "If being a drug abuser is enough, then we can forget about the three strikes law because most people that are committing serious or violent felonies have drug problems or alcohol or some kind of substance abuse because, principally, that's just the reason they do it."

In light of the factors considered, the trial court's decision was not "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.) Accordingly, we hold that it did not abuse its discretion in denying defendant's *Romero* motion.

**Sentencing Errors**

We invited the parties to submit letter briefs addressing whether the abstract of judgment correctly reflected the sentence imposed.  The trial court imposed a five-year consecutive sentence under section 667, subdivision (a) and either did not impose or stayed enhancements under section 667.5, subdivisions (a) and (b).  However, the abstract reflects a five-year consecutive sentence under section 667.5, subdivision (b), one stayed enhancement under section 667, subdivision (a), and two stayed enhancements under section 667.5, subdivision (c).

Defendant first contends the abstract of judgment should be corrected to reflect one enhancement under section 667, subdivision (a) for a consecutive term of five years.  Defendant also contends the trial court erred in staying the enhancements under section 667.5, arguing they must be stricken, rather than stayed.  We agree with both points and remand with directions to strike the enhancements under section 667.5 and prepare an amended abstract of judgment reflecting a five-year consecutive sentence under section 667, subdivision (a) to the Department of Corrections and Rehabilitation.  (See *People v. Jones* (1993) 5 Cal.4th 1142, 1149-1153 [remanding with directions to strike the section 667.5, subdivision (b) enhancement].)

14

## DISPOSITION

The case is remanded for the trial court to correct sentencing errors consistent with the directions stated above.  In all other respects, the judgment is affirmed.


KRIEGLER, J.


We concur:


TURNER, P. J.


KUMAR, J.[*]


_____

[*]    Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.